O. M. PEDERSON, Jr. et al., Appellant,

v.

Donald DILLON d/b/a "Don's
Dock", Appellee.

No. 17833.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

July 16, 1981.

Fulbright & Jaworski, Houston, for appellant.

Charles G. Morton, Jr., Bullard, James Mabry, Houston, for appellee.

DOYLE, EVANS and WARREN, JJ.

DOYLE, Justice.

This is an appeal from a money judgment awarded to Donald Dillon, d/b/a Don's Dock (Dillon), resulting from a tortious interference with a memorandum agreement entered into between Dillon and Clear Lake

Marine Center, Inc. (CLMC). The agreement involved the lease of certain facilities located in Harris County, Texas, owned by CLMC. Only O. M. Pederson, Jr. and Wendell S. Harris, who were owners and corporate officers of CLMC, have appealed from the judgment.

Trial was to a jury and the trial court, in response to the jury's findings, entered judgment for actual and exemplary damages against appellants in their corporate and individual capacities. Appellants' motions for judgment *non obstante veredicto* and motion for new trial were denied.

Appellee's primary contention was that appellants in their individual and corporate capacities interfered with the peaceful possession of his business, which ultimately forced him to close his business.

Appellants contend that no evidence was adduced which showed that they participated in their individual capacity in any of the acts of alleged interference.

Both appellants have submitted briefs. They contain a total of thirty four points of error, many of which overlap. These points are reduced to three essential ones, which dispose of all issues involved.

We first address appellants' point of error which states that the trial court erred in submitting special issues which dealt with appellants' individual capacity because there was no evidence that appellants performed any wrongful acts in their individual capacities.

The following facts are uncontroverted. CLMC was a valid Texas corporation. Dillon and CLMC entered into a memorandum agreement on November 2, 1973. This agreement was signed by Dillon and also by Harris in his capacity as president of the corporation. In June of 1974, CLMC went out of business and sub-leased its remaining interest in the premises to Clear Lake Yacht Services, Inc. Dillon asserts that the acts of interference happened after June 1974, except for the forcible entry and detainer action which was directly instituted by CLMC, not by Harris or Pederson.

■ From the testimony adduced at trial there was no evidence of any wrongful acts by Harris. The only evidence offered by Dillon that Pederson was individually liable was that Pederson offered to get Henderson out of jail if he were incarcerated. Therefore, the only theories advanced by appellee supporting a judgment against Pederson or Harris individually, would be based upon the "piercing of the corporate veil" or the "alter ego" theory.

Dillon had no pleadings to support either of the above theories. He neither requested issues, nor were issues submitted to the jury on those theories, neither was there any evidence to support either theory. The Texas Supreme Court, citing several of its previous decisions, pointed out in *Bell Oil & Gas Co. v. Allied Chemical Corp.*, 431 S.W.2d 336, 340 (Tex.1968):

> Courts will not disregard the corporation fiction and hold individual officers, directors and stockholders liable on the obligations of the corporation except where it appears that the individuals are using the corporate entity as a sham to perpetrate a fraud, to avoid personal liability, avoid the effect of a statute, or in a few other exceptional situations.

■ Dillon contends in his brief, that "This is not a case involving "piercing the corporate veil" or one establishing the corporation as an "alter ego" of the owners, . . ." However, Dillon attempted to plead the alter ego theory by trial amendment. The case which was pled and presented to the jury without any objection from Dillon, was a case of individual capacity versus corporate capacity. An alter ego theory comes under a separate and distinct theory of law, which must be pled and proven. *William B. Roberts, Inc. v. McDrilling Co. Inc.*, 579 S.W.2d 335, 345 (Tex.Civ.App.— Corpus Christi 1979, no writ). Such theory was not pled. A trial amendment attempting to plead it was disallowed. Absent any special issues on these theories, they are deemed waived. *Wells v. Hiskett*, 288 S.W.2d 257, 261 (Tex.Civ.App.—Texarkana 1956, writ ref'd n. r. e.); Texas Rules of Civil Procedure, 279. Appellants' first point of error is sustained.

Appellants' third and fourth points of error may be joined. In summary, they contend that there was no evidence to support the jury's findings that Dillon suffered actual damages in the form of lost profits and exemplary damages can not be awarded in absence of actual damages.

The only element of damages submitted to the jury was loss of profits. Dillon never testified or offered documentation to show that the fuel dock operated at a net profit at any time. To the contrary, Dillon's own income tax returns, which was his exhibit, establish that the business operated at a net loss each year. In 1973, 1974 and 1975 Dillon's business had a net loss. Although there was some controversy concerning the accuracy of tax returns, Dillon testified that they correctly reflected his business income. Dillon also acknowledged that the profitability would depend upon many different "circumstances and conditions". Several such circumstances and conditions which were enumerated by Dillon throughout his testimony were seasonal and weather changes, flooding and high tides, hours of operation, availability and allocation of fuel, wages to be paid for help, and fluctuation, changes and increases in the wholesale price of gasoline.

The settled rule in Texas pertaining to the awarding of damages based on loss of profits is set out in *Birge v. Toppers Mens Wear, Inc.*, 473 S.W.2d 79 (Tex.Civ.App.— Dallas 1971, writ ref'd n. r. e.) at page 85 as follows:

1. A tenant who has been wrongfully evicted, or his possession wrongfully interfered with, may recover lost profits as damages where such loss is shown to be the natural and probable consequence of the act or omission complained of, but not where such profits are dependent upon uncertain and changing conditions.

2. Such damages are allowable where the basis of data for ascertaining them is reasonably certain.

3. If proof of lost profits is to be made by opinions or estimates of loss, these must be predicated upon factual data derived from previous operation of such business; e. g., previous profits earned, and similar facts and circumstances which afford a basis for the computation of such probable losses.

4. While the law does not exact absolute certainty as to the amount of such lost profits, no recovery can be had therefor where it is uncertain whether any profits at all would have been made.

5. In the case of a long term contract, as in this case, while the probability of profits for the entire term may present a difficult problem of proof, facts must nevertheless be established from which it can reasonably be inferred that profits over the contractual period of time will be realized.

6. To warrant the recovery of lost profits, the proof must not be in the realm of conjecture, speculation or opinion not founded on facts and the profits must be capable of being measured or ascertained on a reasonable basis. (cites omitted).

Applying the foregoing tests to the facts before us, it is clear that the prescribed "certainty" is missing. Dillon had no expertise in operating a fuel dock and knew that this particular one had always operated at a loss. Testimony adduced to support his profit expectancy from the operation was based almost entirely on speculation. Dillon's hopes of making any profits at all were conditioned by so many variables that it was virtually impossible to assemble any factual data upon which to predicate any pattern of success. With the uncertainty of gasoline supplies, high tides and flooding, which were only a few of the many contingencies, there was a real uncertainty as to whether any profits would have been realized. Such uncertainty would be a bar to recovery of actual damages resulting from Dillon's loss of profits as found by the jury under the court's instruction as to provable lost profits. *Central Freight Lines, Inc. v. York*, 135 S.W.2d 186, 188 (Tex.Civ.App.— Austin 1939, no writ).

Since we hold that there is no evidence in the record to support the award of actual damages in this case, there is no basis for the awarding of any exemplary

damages. *Cactus Drilling Co. v. McGinty,* 580 S.W.2d 609, 611 (Tex.Civ.App.—Amarillo 1979, no writ); *Ft. Worth Elevators Co. v. Russell,* 123 Tex. 128, 70 S.W.2d 397 (1934). Exemplary damages are not allowed as a matter of right or as additional compensation for every wrongful or unlawful act; rather, such damages are proper only where "wanton, malicious or oppressive conduct" has been demonstrated on the part of the alleged wrongdoer; *Bennett v. Howard,* 141 Tex. 101, 170 S.W.2d 709 (1943); *Mayflower Investment Company v. Stephens,* 345 S.W.2d 786 (Tex.Civ.App.—Dallas 1960, writ ref'd n. r. e.). The record below is void of any evidence of such wanton or malicious conduct on the part of the appellants. Appellants' third and fourth points of error are sustained.

Accordingly, the judgment of the trial court is reversed as to appellants O. M. Pederson, Jr. and Wendell S. Harris, and judgment is rendered that appellee Donald Dillon recover nothing against these appellants. Rule 434, T.R.C.P.