AUTOMARK OF TEXAS, Appellant,

v.

DISCOUNT TROPHIES, Appellee.

No. 05–83–01188–CV.

Court of Appeals of Texas, Dallas.

Oct. 29, 1984.

W. Bruce Monning, Vial, Hamilton, Koch & Knox, Dallas, for appellant.

Billy D. Hullum, Wills Point, for appellee.

Before AKIN, WHITHAM and ROWE, JJ.

ROWE, Justice.

This appeal concerns the oft-litigated question of whether consequential damages for lost profits as found by a jury were proved with sufficient certainty to permit recovery. Each such case must be determined on its own facts. *Pace Corporation v. Jackson*, 275 S.W.2d 849, 859 (Tex.Civ.App.—Austin), *aff'd*, 155 Tex. 179, 284 S.W.2d 340 (1955). Under the particular facts of this case, we hold that the evidence of record was legally insufficient. Accordingly, we reverse and render a take-nothing judgment as to those two awards totaling $16,500 for consequential damages appearing in the jury verdict.

Discount Trophies is the assumed name under which a nationwide business related to ballroom dance conventions has been conducted by Tom O'Dell since about 1975. This business has included not only making the arrangements for these conventions in over a dozen cities on an annual basis, but also providing travel services for and selling jewelry, t-shirts, and trophies to the convention participants. For a price, O'Dell also personalizes the trophies for dance contest winners by engraving on the trophies inscriptions appropriate to identify the prize. To do this engraving O'Dell had purchased in May of 1980 for a price of $2,000 a trophy typewriter from its manufacturer, Automark of Texas. The typewriter operated satisfactorily, with only minor repairs, for about two years. This lawsuit arose because of a malfunction which occurred in the keyboard of the typewriter in February of 1982, which problem despite three separate attempts at correction by Automark, was never solved to O'Dell's satisfaction.

O'Dell was attending a dance convention in Williamsburg, Virginia, when the keyboard on the trophy typewriter first malfunctioned. A substitute keyboard expedited to Williamsburg also malfunctioned. After a second substitute failed, Automark sent a third substitute, which did not reach O'Dell in time for use at subsequent conventions in New Orleans and Houston. When the third substitute was installed, the entire typewriter "blew up" and was returned to Automark for repairs. O'Dell refused to pay $747.60 for repair charges and chose instead to operate the trophy engraving part of his business by the much slower hand engraving method.

On the issue of consequential damages, O'Dell testified at trial both as the business owner and as a business expert. All of O'Dell's non-expert testimony concerning damages was given from personal and un-

aided recollection. Despite a timely request by Automark for O'Dell's pertinent business records and despite an admission by O'Dell that such records were available, O'Dell appeared at trial with no objective business data other than a hand-prepared summary itemizing potential engraving sales losses, which summary the trial judge ruled to be inadmissible. Although deprived of any resort to this summary, O'Dell was able nonetheless to recollect approximately: (1) the number of participants at 16 dance conventions while he was without use of the trophy typewriter, (2) the engraving sales actually made at these conventions, and (3) the engraving sales at similar conventions held the previous year. Because of O'Dell's long-time experience in the dance convention field, the trial judge also permitted O'Dell to testify as an expert. The substance of O'Dell's expert testimony was that between seventy to eighty percent of all convention participants acquire engraving services and that sale proceeds for engraving services average between $4 and $5 per person for the total number of all participants at a convention. We observe in passing that all of this expert testimony can be characterized as referring to a loss of sales income rather than to a loss of net profits. We observe, further, that calculations given by O'Dell in dollars are stated invariably not as the individually accurate figures but as merged totals, as percentage estimates, as averages, and as rounded-off even amounts. We find this subjective testimony of O'Dell, standing alone, legally insufficient to support an award of consequential damages for lost profits.

To be recoverable, lost profits must be proved with "reasonable certainty." *Southwest Battery Corporation v. Owen,* 131 Tex. 423, 115 S.W.2d 1097, 1098 (1938); *Copenhaver v. Berryman,* 602 S.W.2d 540, 544 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.). Controlling as to proper disposition of this appeal is the complete absence from the record of objective facts, figures, and data without which, in our opinion, it cannot be ascertained with the required degree of certainty that O'Dell's trophy engraving operation, as distinguished from his other dance convention related business, would have continued to be profitable had the trophy typewriter not failed to function. Two critical determinants are missing: (1) nowhere in the record is there objective documentation that prior to the trophy typewriter's malfunctioning the particular business operation in question had an established track record of profitability, and (2) nowhere in the record is there objective documentation that if the trophy engraving sales had continued at their past rate, and if all current overhead and expenses allocable to this particular business operation had been deducted from gross sales income, a net profit would have been obtained had the typewriter not malfunctioned. As a consequence, it is not possible from the record to make a meaningful correlation between the business's profitability with the operational typewriter and the business's loss of profitability attributable to the nonoperational typewriter. *Atomic Fuel Extraction Corporation v. Slick's Estate,* 386 S.W.2d 180, 189–90 (Tex.Civ. App.1964), writ ref'd n.r.e. per curiam, 403 S.W.2d 784 (Tex.1965); *Pederson v. Dillon,* 623 S.W.2d 696, 698 (Tex.Civ.App. —Houston [1st Dist.] 1981, no writ); *Copenhaver,* 602 S.W.2d at 544; *Van Sickle v. Clark,* 510 S.W.2d 664, 668–69 (Tex.Civ. App.—Fort Worth 1974, no writ). We agree with Automark's contention that the distinguishing feature between the line of Texas cases permitting recovery for lost profits and the line of cases denying recovery is a reliance upon routinely kept business records which have been produced in court—that is, upon an evaluation of a business's decreased profitability based upon objective facts, figures, and data and not upon the subjective opinions of interested parties. *White v. Southwestern Bell Telephone Company, Inc.,* 651 S.W.2d 260, 262 (Tex.1983); *Village Square, Ltd. v. Barton,* 660 S.W.2d 556, 560 (Tex.App.— San Antonio 1983, no writ); *compare Mesa Agro v. R.C. Dove & Sons,* 584 S.W.2d 506, 512 (Tex.Civ.App.—El Paso 1979, writ ref'd n.r.e.); Restatement (Second) of Contracts, § 350, illustration 5 at 128 (1979). The

record before us places this case in the line where recovery has been denied. Automark's point of error complaining of legally insufficient evidence of lost profits is sustained. The judgment of the trial court is reformed to delete the combined $16,500 award for consequential damages and to provide for total damages in favor of Discount Trophies, of $3,750, including attorney's fees, instead of $20,250.