**HOLT ATHERTON INDUSTRIES, INC., Petitioner,**

v.

**Roy HEINE, and Wife, Kitty Heine, Respondents.**

No. D–0562.

Supreme Court of Texas.

June 17, 1992.

G. Wade Caldwell, Michael Golightly, Rebecca Simmons, San Antonio, for petitioner.

David C. Griffin, Cynthia T. Sheppard, John Griffin, Victoria, for respondents.

## OPINION

COOK, Justice.

This case presents two questions: 1) whether the trial court abused its discretion in denying the motion of defendant Holt Atherton Industries, Inc. to set aside default judgment and for new trial; and 2) whether there is any evidence to support recovery of lost profits. We hold that the trial court did not abuse its discretion in denying the motion for new trial and that the evidence is legally insufficient to support recovery of lost profits. Therefore, we affirm in part and reverse in part the judgment of the court of appeals. 797 S.W.2d 250.

In January 1987, Roy and Kitty Heine took their bulldozer to Holt Machinery Company for repairs under an alleged oral warranty. Holt Machinery did not recognize the oral warranty. The bulldozer remained in the possession of Holt Machinery but it was not being repaired because Holt Machinery did not recognize the warranty and the Heines did not agree to pay for repairs. In August of 1987, Holt Machinery merged into Holt Atherton Industries, Inc. Holt Atherton then merged into B.D. Holt Company. In September of 1987, the Heines agreed to pay for the repairs to their bulldozer. In March 1988, the Heines brought this action against B.D. Holt, B.D. Holt Co., and Holt Co. of Texas alleging violations of the Deceptive Trade Practices Act (Tex.Bus. & Com.Code §§ 17.41–17.63), breach of express and implied warranties, breach of contract, negligence, and tortious interference with business relations. In July 1988, the Heines' Second Amended Original Petition added Holt Atherton as a defendant and was properly served on Holt Atherton's registered agent, Stevenson Atherton. In August 1988, the trial court rendered default judgment against Holt Atherton due to its failure to appear and answer. The Heines severed their cause of action against Holt Atherton to obtain a final judgment. Subsequently, the trial court stayed the actions against the other defendants pending the outcome of this appeal. Holt Atherton moved to set aside the default judgment and for new trial. The trial court denied Holt Atherton's motion, and the court of appeals affirmed. 797 S.W.2d 250.

## I.

A trial court's discretion in determining whether to grant a new trial after the court renders a default judgment must be referenced to the guiding rule set out in *Craddock v. Sunshine Bus Lines*, 134 Tex. 388, 133 S.W.2d 124 (1939). The rule is:

A default judgment should be set aside and a new trial ordered in any case in which [1] the failure of the defendant to answer before judgment was not intentional, or the result of conscious indifference on his part, but was due to a mistake or an accident; provided [2] the motion for a new trial sets up a meritorious defense and [3] is filed at a time when the granting thereof will occasion no delay or otherwise work an injury to the plaintiff.

*Craddock*, 133 S.W.2d at 126; *Bank One, Texas, N.A. v. Moody*, 830 S.W.2d 81 (Tex. 1992).

When applying the *Craddock* test, the trial court looks to the knowledge and acts of the defendant as contained in the record before the court. *Strackbein v. Prewitt*, 671 S.W.2d 37, 38–39 (Tex.1984). Where factual allegations in a movant's affidavits are uncontroverted, it is sufficient that the motion for new trial and accompanying affidavits set forth facts which, if true, would satisfy the *Craddock* test. *Cliff v. Huggins*, 724 S.W.2d 778, 779 (Tex.1987); *Strackbein*, 671 S.W.2d at 38–39. However, conclusory allegations are insufficient. *Folsom Investments, Inc. v. Troutz*, 632 S.W.2d 872, 875 (Tex.App.— Fort Worth 1982, writ ref'd n.r.e.).

When a defendant relies on his agent to file an answer, he must demonstrate that both he and his agent were free of conscious indifference. *Harris v. Lebow*, 363 S.W.2d 184, 186 (Tex.Civ.App.—Dallas 1962, writ ref'd n.r.e.). Because Stevenson Atherton was Holt Atherton's registered agent, Holt Atherton must show that Stevenson Atherton's failure to answer was due to a mistake or accident rather than intentional or due to conscious indifference.

The evidence introduced by Holt Atherton in support of its motion for new trial was uncontroverted by the Heines. Therefore, the trial court could accept this evidence as true and apply the *Craddock* requirements. The only evidence Holt Atherton presented to the trial court to negate intentional disregard or conscious indifference was the affidavit of Stevenson Atherton, which states:

> The failure of the corporation to file an answer herein was due to accident and mistake due to the complete lack of any knowledge as to the facts or circumstances involved in this cause. Holt Atherton Industries, Inc. has never done any business with Roy or Kitte [sic] Heine, nor repaired any type of equipment nor provided any type of service of any kind to either Roy or Kitte [sic] Heine. The corporation known as Holt Atherton Industries, Inc. has not been actively involved in the operation of a business that repairs heavy equipment of any type during the time period set forth in the Heine's [sic] lawsuit.

Holt Atherton argues that its motion and affidavit established that it failed to answer due to an accident or mistake. Atherton's statement that no answer was filed "due to accident and mistake" is merely a conclusory allegation. There is no explana-tion of the nature of the mistake. The factual allegations only serve to set up a meritorious defense. There are no factual allegations supporting the first part of the *Craddock* test. The essence of Holt Atherton's evidence is that it did not file an answer because Stevenson Atherton did not think Holt Atherton could possibly be held liable.

The trial court did not abuse its discretion in denying the motion because it could have concluded, based on the evidence before it, that Holt Atherton's failure to answer was intentional or due to conscious indifference. There was no support given to the allegation of mistake or accident. Because we hold that the first element of the *Craddock* test was not satisfied, we do not reach the other two elements.

## II.

Once a default judgment is taken on an unliquidated claim, all allegations of fact set forth in the petition are deemed admitted, except the amount of damages. *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 731 (Tex.1984). A court rendering a default judgment must hear evidence of unliquidated damages. TEX. R.CIV.P. 243; *see Morgan*, 675 S.W.2d at 731. The trial court, in this case, held a hearing and determined that the Heines suffered damages in the amount of $159,-665 including $120,000 for lost profits.[1]

Holt Atherton argues that there is no evidence supporting the trial court's award of damages for lost profits. "In a nonjury trial, where no findings of fact or conclusions of law are filed or requested, it will be implied that the trial court made all the necessary findings to support its judgment." *Burnett v. Motyka*, 610 S.W.2d 735, 736 (Tex.1980) (citing *Goodyear Tire and Rubber Co. v. Jefferson Construction*

---

1. The trial court's judgment includes the $120,-000 as "Loss of Income Due to Absence of Dozer." Holt Atherton notes that the correct measure of damages is lost net profit, not gross profits. *See Turner v. PV Int'l Corp.*, 765 S.W.2d 455, 465 (Tex.App.—Dallas 1988, *writ denied per curiam*, 778 S.W.2d 865 (Tex.1989)); *Copenhaver v. Berryman*, 602 S.W.2d 540, 544 (Tex.Civ. App.—Corpus Christi 1980, writ ref'd n.r.e.).

However, read most favorably to the Heines, the record indicates that the trial court's judgment is based on an amount the court determined remained after the Heines had paid out expenses. Therefore, the court applied the correct measure of damages. To avoid confusion in this opinion, we refer to the $120,000 award as "lost profits."

**84**

*Co.,* 565 S.W.2d 916 (Tex.1978); *Lassiter v. Bliss,* 559 S.W.2d 353 (Tex.1978)). When, as in this case, a statement of facts is brought forward, these implied findings may be challenged by factual or legal sufficiency points. *Roberson v. Robinson,* 768 S.W.2d 280, 281 (Tex.1989); *Burnett,* 610 S.W.2d at 736. In determining a legal sufficiency question, a court must consider only the evidence and inferences that tend to support the finding, and disregard all evidence and inferences to the contrary. *Best v. Ryan Auto Group, Inc.,* 786 S.W.2d 670, 671 (Tex.1990); *King v. Bauer,* 688 S.W.2d 845, 846 (Tex.1985). If there is more than a scintilla of evidence to support the finding, the no evidence challenge fails. *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex.1987); *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983).

■ Recovery for lost profits does not require that the loss be susceptible of exact calculation. *White v. Southwestern Bell Tel. Co.,* 651 S.W.2d 260, 262 (Tex. 1983); *Southwest Battery Corp. v. Owen,* 131 Tex. 423, 115 S.W.2d 1097, 1098 (1938). However, the injured party must do more than show that they suffered some lost profits. The amount of the loss must be shown by competent evidence with reasonable certainty. *White,* 651 S.W.2d at 262; *Southwest Battery,* 115 S.W.2d at 1098. What constitutes reasonably certain evidence of lost profits is a fact intensive determination. As a minimum, opinions or estimates of lost profits must be based on objective facts, figures, or data from which the amount of lost profits can be ascertained. *See, e.g., Pena v. Ludwig,* 766 S.W.2d 298, 304 (Tex.App.—Waco 1989, no writ); *Frank B. Hall & Co. v. Beach, Inc.,* 733 S.W.2d 251, 258 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.); *Keller v. Davis,* 694 S.W.2d 355, 357 (Tex.App.— Houston [14th Dist.] 1985, writ ref'd n.r.e.); *Automark of Texas v. Discount Trophies,* 681 S.W.2d 828, 830 (Tex.App.—Dallas 1984, no writ). Although supporting documentation may affect the weight of the evidence, it is not necessary to produce in

court the documents supporting the opinions or estimates. *See, e.g., Pena,* 766 S.W.2d at 304; *Keller,* 694 S.W.2d at 357.[2]

The Heines' testimony was the only evidence presented concerning their lost profits and can be divided into two segments. First, Mr. Heine was examined by his counsel. Then, the trial judge questioned both Heines.

■ When Mr. Heine was examined by his counsel, only one question was asked which touched on lost profits. The relevant question and answer are:

Q. Now as a result of the defendant keeping the dozer for eight months, did you lose out on $200,200 in lost income during that time period?

A. Yes, sir, I did.

Even if this testimony were otherwise sufficient, lost income is not the correct measure of damages. *See supra* note 1. Further, this testimony is legally insufficient because it does not provide any indication of how the Heines determined what their lost profits were. *See, e.g., Village Square, Ltd. v. Barton,* 660 S.W.2d 556, 559–60 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.) (testimony stating only total amount of lost profits held legally insufficient); *Frank B. Hall & Co.,* 733 S.W.2d at 259 (same). The court does not have any basis for determining whether the damages were established with reasonable certainty or were based on pure speculation. This question and answer are legally insufficient to prove lost profits.

After the Heines' counsel completed his questions, the trial judge asked additional questions to determine what the Heines' lost profits were and how the Heines concluded that their lost income was $200,200. The judge started out by questioning Mr. Heine. Mr. Heine could not provide answers to the judge's questions but suggested that Mrs. Heine could be more helpful because she kept the books for the Heines. Mrs. Heine testified that she could not say what their lost profits were without look-

**2.** We disapprove *Automark of Texas,* 681 S.W.2d at 830, to the extent that it holds the supporting records must be produced in court.

ing at their books. When the judge asked what the Heines showed as profits on their income tax returns for 1985 or 1986, the years preceding the year that Holt Atherton kept their bulldozer, Mrs. Heine did not know. However, Mr. Heine responded that their income tax return showed profits of about $120,000.[3] Both Heines testified that in 1985, they had two bulldozers that operated about half of the time because business was slow. Apparently the trial judge determined that one bulldozer working full-time would earn as much in thirteen months as two bulldozers working half-time would earn in twelve months.

■ There are two problems with this analysis. First, the Heines never offered any evidence showing that there was enough work to keep two bulldozers working full-time over the relevant thirteen month period. This is particularly significant here because the Heines testified that there had not been enough work in the preceding years to keep both bulldozers working full-time.[4] Second, the Heines never showed that they were entitled to recover lost profits for the entire thirteen month period. *See Morgan,* 675 S.W.2d at 731 (must show damages were caused by event sued on). The total down time may have been thirteen months. However, according to Mr. Heine's testimony, Holt Atherton only kept the bulldozer for eight months before starting repairs.

In response to further questions by the trial judge, Mr. Heine testified that the Heines lost several contracts because they did not have their bulldozer available. Mr. Heine was not able to specify which contracts they lost, how many they lost, how much profit they would have had from the contracts, or who would have awarded them contracts. The Heines could have supported their lost profits with testimony that they had lost out on *specific* contracts because they did not have their bulldozer available. *See Pace Corp. v. Jackson,* 155 Tex. 179, 284 S.W.2d 340, 349 (1955). How-

ever, the bare assertion that contracts were lost does not demonstrate a reasonably certain objective determination of lost profits. *See Pace,* 284 S.W.2d at 348–49; *Pena v. Ludwig,* 766 S.W.2d 298, 301–02 (Tex. App.—Waco 1989, no writ).

The testimony elicited by the trial judge provides pieces of several different methods of calculating lost profits. However, the Heines were not able to provide evidence supporting one complete calculation. Recovery of lost profits must be predicated on one complete calculation. *See, e.g., Fleming Mfg. Co. v. Capitol Brick, Inc.,* 722 S.W.2d 399, 402 (Tex.1986) (evidence legally sufficient to support lost profits; did not discuss evidence), *on remand,* 734 S.W.2d 405 (Tex.App.—Austin 1987, writ ref'd n.r.e.) (evidence held factually insufficient to support lost profits; detailed evidence shows what was in the record for the Supreme Court to consider as part of no evidence review; demonstrates a complete calculation of lost profits); *Chemical Express Carriers, Inc. v. French,* 759 S.W.2d 683, 687–88 (Tex.App.—Corpus Christi 1988, writ denied) (demonstrating a complete calculation of lost profits); *Keller,* 694 S.W.2d at 357 (same); *Reliance Universal Inc. v. Sparks Indus. Serv., Inc.,* 688 S.W.2d 890, 893–96 (Tex.App.—Beaumont 1985, writ ref'd n.r.e.) (same); *Village Square, Ltd.,* 660 S.W.2d at 559–60 (statement of total lost profits without supporting analysis held legally insufficient); *Frank B. Hall & Co.,* 733 S.W.2d at 259 (same); *Barbier v. Barry,* 345 S.W.2d 557, 563 (Tex.Civ.App.—Dallas 1961, no writ) (held no evidence of lost profits because no evidence of supporting calculations). We do not sanction any one method for determining lost profits. *Southwest Battery Corp.,* 115 S.W.2d at 1099. However, once a party has chosen a particular method for measuring their lost profits, they must provide a complete calculation. The Heines have not done that. Therefore, the evidence is legally insufficient to provide a

---

**3.** Although Mr. Heine was not on the witness stand when he made this statement, it was transcribed by the court reporter and appears in the statement of facts.

**4.** Mr. Heine testified "'85 was light; '86 was disastrous."

reasonable basis for determining the Heines' lost profits.

## III.

We affirm the court of appeals' holding that the trial court did not abuse its discretion in denying Holt Atherton's motion for new trial and reverse the court of appeals' holding that the evidence supporting an award of lost profits was legally sufficient. As a general matter, when we sustain a no evidence point of error after a trial on the merits, we render judgment on that point. TEX.R.APP.P. 81(c); *Mobil Oil Corp. v. Frederick*, 621 S.W.2d 595, 596 (Tex.1981); *National Life and Accident Ins. Co. v. Blagg*, 438 S.W.2d 905, 909 (Tex.1969); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965). Texas courts view an appeal from a default judgment somewhat differently than an appeal from a trial on the merits. In part, this is because an adjudication on the merits is preferred in Texas. *See, e.g., In re T.B.S.*, 601 S.W.2d 539, 543 (Tex.Civ. App.—Tyler 1980, no writ).

▮ After a default judgment is granted, the trial court must hear evidence of unliquidated damages. TEX.R.CIV.P. 243. However, as a practical matter, in an uncontested hearing, evidence of unliquidated damages is often not fully developed. This is particularly true when the trial judge expresses a willingness to enter judgment on the evidence that has been presented. Therefore, when an appellate court sustains a no evidence point after an *uncontested* hearing on unliquidated damages following a no-answer default judgment, the appropriate disposition is a remand for a new trial on the issue of unliquidated damages.

We remand the cause to the trial court for a new trial on the issue of lost profits.

Concurring and dissenting opinion by Justice DOGGETT joined by Justice MAUZY.

DOGGETT, Justice, concurring and dissenting.

In overturning a judgment for this family business, the majority imposes new obstacles to any commercial enterprise that has wrongfully suffered a loss of profits.[1] Today's opinion abandons our well established rules governing review of legal sufficiency of the evidence and disavows this particular businessperson's sworn testimony as totally worthless. Although I concur in that part of the judgment affirming liability, I dissent from the court's decision ensuring that lost profits stay lost.

While covered by a Holt Atherton repair warranty, a part broke on one of the two D-8 Caterpillar bulldozers owned and operated by Roy and Kitty Heine. Instead of providing prompt repairs, Holt Atherton allegedly left them without the use of the bulldozer for about a year. Before granting the Heines a default judgment, the trial court appropriately heard evidence on their unliquidated damages including lost profits. *See Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 731 (Tex.1984).

Roy calculated lost income to be $200,-200, based on the days the machine was incapacitated and also on "several" lost land clearing contracts, one of which, the O'Connor contract, was open-ended as to the amount of work. He further testified that by charging $80 per hour for bulldozer work, he realized an "immediate profit" of about $30 to $40 per hour. Additionally, he described a job for other of his equipment, which was lost due to customer impatience with the extended delays resulting from breakdown of the bulldozer. His total figure included an adjustment "for the time that there might not have been anything." Referencing the probable familiarity of experienced business people with approximate costs and profit margins, the trial court inquired as to profits shown on their recent income tax returns. The Heines

---

1. In burdening small businesses like the one involved here, the majority continues an unfortunate trend of insensitivity to the realities of independent business. *See Caller–Times Publishing Co. v. Triad Communications, Inc.*, 826 S.W.2d 576, 580, n. 4 (Tex.1992) (Doggett, J., dissenting) (small business made easy prey for anticompetitive, monopolistic practices); *Crim Truck & Tractor Co. v. Navistar Int'l Trans. Corp.*, 823 S.W.2d 591, 597 (Tex.1992) (Mauzy, J., dissenting) (local dealer denied remedy for abuse by a franchisor).

responded that in the year before the breakdown, they reported a profit of about $120,000 by working both dozers full time for six months. As the trier of fact, the trial judge found damages for lost profits in this lesser amount, rather than the larger initial estimate.

On appeal, Holt Atherton urges that this testimony was "too speculative" and constituted no evidence to support a finding of damages for lost profits. In reviewing a no evidence point, we have recently written that consideration must be limited to:

> only the evidence and inferences tending to support the jury's finding, viewed most favorably in support of the finding, and disregard[ing] all contrary evidence and inferences.

*Havner v. E–Z Mart Stores, Inc.*, 825 S.W.2d 456, 458 (Tex.1992). Only when reasonable minds cannot differ in concluding that the evidence offered lacks probative force will it be held to constitute the legal equivalent of no evidence. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983). Recognizing that where "more than a scintilla of evidence [supports] the trial court's finding, the no evidence challenge fails," at 84, the majority misapplies the standard and implicitly creates new requirements for what constitutes a "scintilla" in the context of lost profits.

To support a default judgment in *Capitol Brick, Inc. v. Fleming Mfg. Co.*, 722 S.W.2d 399 (Tex.1986), a small business gave evidence of its lost profits arising from loss of use of an inadequately repaired brick-making machine. The court of appeals reversed on other nonevidentiary grounds. In reversing the judgment of the court of appeals, we addressed a previously unconsidered no evidence challenge, finding that "the record reflects more than a scintilla of competent evidence to support the ... lost profits." *Id.* at 402. The

record there was strikingly similar to that here, as indicated by the writing of the court of appeals on remand, addressing the remaining factual insufficiency challenge:

> Sprott [its president] testified that ... Capitol Brick's mold press which would have produced this particular ten inch brick was idle for 11½ weeks; that during normal conditions the press would have produced some 1,750,000 bricks; and that these bricks would have sold for $120 per thousand, or some $207,000. Sprott also indicated a 25% net profit figure which translates into lost profits of $51,750. This was the only evidence concerning Capitol Brick's unliquidated damage claim.

*Fleming Mfg. Co. v. Capitol Brick, Inc.*, 734 S.W.2d 405, 406 (Tex.App.—Austin 1987, writ ref'd n.r.e.).[2] Yet today's opinion burdens businesses by disregarding our prior writing, creating a higher evidentiary standard for small service-oriented companies, and presuming to conduct a factual sufficiency review on a no evidence point of error. The majority considers essentially the same factual questions previously deemed the function of the court of appeals:[3] whether the market demand would have supplied as much work as the Heines estimated, the certainty of specific contract prices, and whether the second bulldozer could have handled the total market demand. At 85.

To negate the award of lost profits, the majority must take something and call it nothing—it must treat the Heines' sworn testimony, given in response to a series of questions from the trial judge, as devoid of any legal value. This contrived disposition results from the impossibility of a remand to the court of appeals for a factual insufficiency review that Holt Atherton has failed to request.

Denial of relief in this case has ramifications that extend to all commercial litiga-

---

2. Similarly, in *Texas Gas Explor. v. Broughton Offshore*, 790 S.W.2d 781, 789 (Tex.App.—Houston [14th Dist.] 1990, no writ), a party's uncontroverted testimony, based on his industry experience, regarding estimated profits from disabled equipment was held to constitute legally sufficient evidence.

3. *Compare Capitol Brick*, 734 S.W.2d at 407, in which the court of appeals on remand examined the factual questions of whether the market demand existed for the estimated production it would have produced if the machine had been working, the certainty of the estimated price, and whether the demand could have been met from existing inventory in determining that evidence presented was factually insufficient.

tion in which profits are an issue. The majority begins by eroding the distinction we have long recognized between uncertainty as to the occurrence of lost profits and uncertainty merely as to their exact amount. The former, but not the latter, is fatal to recovery. *See, e.g., Southwest Battery Corp. v. Owen,* 131 Tex. 423, 115 S.W.2d 1097, 1099 (Tex.1938).

It then announces new requirements that a party must chose a particular method for measuring lost profits, at 85, and that "[r]ecovery of lost profits must be predicated on one complete calculation." *Id.* at 85. We have previously declined to construct such inflexible rules that could unfairly bar recovery:

> It is impossible to announce with exact certainty any rule measuring the profits the loss for which recovery may be had.... A party who breaks his contract cannot escape liability because it is impossible to state or prove a perfect measure of damages.

*Southwest Battery Corp.,* 115 S.W.2d at 1099; *accord White v. Southwestern Bell Tel. Co.,* 651 S.W.2d 260, 263 (Tex.1983); *Davis v. Small Business Inv. Co. of Houston,* 535 S.W.2d 740, 743 (Tex.Civ.App.— Texarkana 1976, writ ref'd n.r.e.) (victim must present evidence from which factfinder can reasonably infer that some profit would have been made and reasonably estimate the amount of loss). Similarly, in *Pace Corp. v. Jackson,* 284 S.W.2d 340, 348 (Tex.1955), this court concluded that *measuring* lost profits is an inherently imperfect undertaking. *See also Pena v. Ludwig,* 766 S.W.2d 298, 301 (Tex.App.—Waco 1989, no writ). Small service businesses offering skillful operation of their equipment are entitled to some latitude in measuring inexact lost profits sustained from loss of use. *Chemical Exp. Carriers, Inc. v. French,* 759 S.W.2d 683, 687–88 (Tex. App.—Corpus Christi 1988, writ denied) (owner's estimated lost profits for charter company's disabled airplane legally sufficient). *See also Texas Tool Traders, Inc. v. Mosley Machinery Co.,* 422 S.W.2d 229 (Tex.Civ.App.—Waco 1967, no writ).

The majority's professed lack of "any basis for determining whether the damages were established with reasonable certainty or were based on pure speculation," at 84, discounts the Heines' response to the trial court's inquiry about how they "calculate[d]" their damages. They referenced hourly charges, lost contracts, cost factors, and down-time adjustments. Estimations, when "given in terms of calculations, [constitute] more than conjecture, speculation or guesswork" and must be evaluated by the finder of fact. *Reliance Universal Inc. v. Sparks Industrial Services,* 688 S.W.2d 890, 895–96 (Tex.App.—Beaumont 1985, writ ref'd n.r.e.).

Though criticized by the majority for failing to explain "that they had lost out on *specific* contracts," at 85, the Heines were not necessarily required to identify specific, measurable, lost contracts because they were an existing business with a history of profitability.[4] Such an operation ordinarily encounters lesser evidentiary hurdles to show lost profits already sustained than would a business with little record of past earnings that seeks to show future lost profits. *See Barbier v. Barry,* 345 S.W.2d 557, 563 (Tex.Civ.App.—Dallas 1961, no writ). Among the methods a party may use to calculate its lost profits is *either* a history of profitability *or* the actual existence of lost contracts. *Allied Bank West Loop v. C.B.D. Assoc.,* 728 S.W.2d 49, 54–55 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.).

There is undoubtedly some legal evidence to support the Heines' lost profits damages. Since there is no factual insufficiency point of error requiring further review by the court of appeals, its judgment should be affirmed.

Justice MAUZY joins in this concurring and dissenting opinion.

---

**4.** Nor were they required to prove their previous profits "remain[ed] stable or [grew] to support an award for lost profits in subsequent years." *Martin v. Lou Poliquin Enterprises, Inc.,* 696 S.W.2d 180, 187 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.).