Joe Hernandez Enter. v. Hotard 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







ON MOTION FOR REHEARING









NO. 03-95-00183-CV







Joe Hernandez Enterprise, Inc., Appellant



v.



Chris Hotard and Melissa Hotard, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT


NO. 94-09232, HONORABLE MARY PEARL WILLIAMS, JUDGE PRESIDING







PER CURIAM



 We grant appellant's motion for rehearing, withdraw our opinion and judgment of
January 10, 1996, and substitute this opinion therefor. Appellant Joe Hernandez Enterprise, Inc.
(Hernandez), challenges a default judgment rendered in favor of appellees Chris Hotard and
Melissa Hotard. The Hotards sought damages arising from a vehicle collision and, when
Hernandez failed to answer their petition, obtained a default judgment against it. Although
Hernandez timely moved to set aside the default judgment, the trial court refused to do so. We
will reverse the judgment of the trial court and remand the cause for trial on the merits.

 In its first point of error, Hernandez asserts that the trial court erred in refusing to
set aside the default judgment. (1) A trial court's discretion in determining whether to set aside a
default judgment is governed by the rule set out in Craddock v. Sunshine Bus Lines:



A default judgment should be set aside and a new trial ordered in any case in
which the failure of the defendant to answer before judgment was not intentional,
or the result of conscious indifference on his part, but was due to a mistake or an
accident; provided the motion for new trial sets up a meritorious defense and is
filed at a time when the granting thereof will occasion no delay or otherwise work
an injury to the plaintiff.



133 S.W.2d 124, 126 (Tex. 1939).

 The supreme court has recently explained that a failure to answer is not intentional
or consciously indifferent merely because it is deliberate; it must also be without adequate
justification. Proof of such justification--accident, mistake, or other reasonable explanation--negates
the intent or conscious indifference for which a new trial can be denied. Smith v. Babcock &
Wilcox Constr. Co., 913 S.W.2d 467, 468 (Tex. 1995). In addition, if the defendant relies on its
agent to file an answer, it must show that both the defendant and its agent were free of conscious
indifference. Holt Atherton Indus., Inc. v. Heine, 835 S.W.2d 80, 83 (Tex. 1992).

 To support its contention that its failure to answer was not intentional or
consciously indifferent, Hernandez both offered oral testimony and attached affidavits to its
motions to set aside the default judgment. The Hotards attempted to controvert Hernandez' proof
by offering their own affidavits. In determining whether Hernandez acted with intentional
disregard or conscious indifference, we look to the knowledge and acts of Hernandez. Strackbein
v. Prewitt, 671 S.W.2d 37, 38-39 (Tex. 1984).

 Hernandez alleged in its amended motion to set aside that it relied on its insurer,
Western Star Insurance Company, to answer for it in the cause. Hernandez stated that Western
Star had been placed in receivership without Hernandez' knowledge and that the receiver, despite
having received the citation and petition, did not answer for Hernandez. Hernandez alleged that
its failure to answer was accidental in that the receiver mistakenly did not inform Hernandez that
it would not defend it. Hernandez thus relied on the receiver to either answer the petition or
communicate its intent not to answer.

 Edelia Hernandez, one of Hernandez' co-owners, testified at the first hearing that,
because her father does not read or write except to sign his name, she handles most of the
paperwork for Hernandez and that she first learned that Western Star might not be solvent after
the default judgment was rendered. Edelia states in an affidavit submitted with the original motion
to set aside that no one had officially informed them that Western Star was in receivership. In a
second affidavit submitted with the amended motion, Edelia states that Hernandez was served with
the citation and petition on September 1, 1994. On September 6, Edelia faxed the citation and
petition to Mike Davidson, the agent who sold her the Western Star policy. Davidson told her
that he would pass the citation and petition along to Western Star, which would provide an
attorney, file an answer, and represent Hernandez in the suit. Edelia states that she thought that
everything would be taken care of. 

 Mike Davidson states by affidavit that, when the accident occurred, the insurance
agency he owned was Hernandez' agent and Hernandez was insured by a policy his agency had
written. Davidson confirms that Edelia Hernandez faxed a copy of the citation and petition to his
office on September 6, 1994. The next day, Davidson gave a copy of the citation and petition to
Sam Keyvan Insurance Agency in Dallas. Davidson states that Sam Keyvan is the insurance agent
who worked with him to obtain the policy from Western Star. Keyvan later told Davidson that
he had taken care of the matter. Davidson states that, in forwarding the citation and petition to
Keyvan, he followed standard procedure for processing claims when the insurer has a duty to
defend. 

 Sam Keyvan states in his affidavit that he is the insurance agent who worked with
Davidson to procure the Western Star policy for Hernandez. Keyvan relates that, on receiving
a copy of the citation and petition from Davidson on September 7, he immediately faxed a copy
to the broker who obtained the policy, Commercial Wheels Alliance in Pascagoula, Mississippi. 
Keyvan sent the fax, as well as a mailed copy, to the attention of Vickie Denton. Keyvan testifies
that he understood that Commercial Wheels would forward the citation and petition to Western
Star and that he assumed that Commercial Wheels and Western Star would take care of the matter. 
He did not know that Western Star had been placed in receivership.

 Brenda Thomas, by affidavit, testifies that on September 8, 1994, she faxed a copy
of the citation and petition, along with a copy of the auto loss notice, to Rose at International
Reinsurance Consultants, Inc. (IRCI). Thomas states that she included instructions to forward a
copy of these documents to the insurer. On the cover sheet Thomas faxed to IRCI, Thomas asked
Rose LaBruno to send the citation and petition to the "reinsurer," implying that Thomas knew of
Western Star's impaired status and asked LaBruno to act accordingly. 

 Rose LaBruno, vice-president of IRCI, states in her affidavit that IRCI introduced
Commercial Wheels to Western Star. LaBruno had been informed that the Florida Department
of Insurance had obtained an injunction against Western Star's operations in the United States and
had been appointed receiver for Western Star. On September 8, 1994, LaBruno received by fax
a copy of the citation and petition in this cause. The same day, she transmitted a copy of the
citation to Robin Westcott at the Department. LaBruno attached to her affidavit a copy of the
citation and petition that she had received and forwarded to the Department. The first page of the
attachment is a fax cover sheet carrying the heading "Commercial Wheels Alliance" and showing
that it was sent by Thomas. This sheet is stamped "faxed" twice; handwritten by LaBruno next
to the stamps are the date of September 8, 1994, LaBruno's initials, and Robin Westcott's name. 
LaBruno avers that the stamps and handwriting confirm that she faxed the citation and petition to
Westcott at the Department.

 At the second hearing on Hernandez' motion to set aside the judgment, the Hotards
admitted in evidence Robin Westcott's affidavit. Westcott states that, although she thoroughly
searched the records at her office, she had found no record of a citation or petition in this cause,
nor had she found any indication that Hernandez or its agent ever contacted or tried to contact
Western Star or the receiver about the suit. Had Hernandez contacted her office, it would have
been informed that neither Western Star nor the receiver would defend it.

 In this case, Hernandez presented affidavits from each person who had authority
to take action on its behalf except Westcott at the receiver's office. Westcott's affidavit was
introduced by the Hotards. Together, these uncontradicted affidavits show that the citation and
petition were inadvertently lost during or after their transmission from IRCI to the Department. 
Such a showing has been held sufficient to negate intent or conscious indifference. E.g.,
Strackbein, 671 S.W.2d at 39; Triad Contractors, Inc. v. Kelly, 809 S.W.2d 683, 685 (Tex.
App.--Beaumont 1991, writ denied); Drake v. McGalin, 626 S.W.2d 786, 788 (Tex.
App.--Beaumont 1981, no writ). Cf. BancTEXAS McKinney, N.A. v. Desalination Sys., Inc., 847
S.W.2d 301, 302-03 (Tex. App.--Dallas 1992, no writ) (affidavit stated only in general terms that
citation was lost without explaining where chain of communication broke down).

 The Hotards nevertheless argue that Hernandez acted with conscious indifference
by relying on Western Star or its receiver to answer the suit. The Hotards point to an
endorsement to Hernandez' insurance policy providing that coverage does not apply when a
covered auto is operated more than fifty miles from the place the auto is principally garaged. 
While the covered vehicle was principally garaged in Dallas, the accident allegedly occurred in
Austin.

 Although believing that such a policy covered this accident may have been
unreasonable, Hernandez' attempt to obtain representation from the insurer shows that it was not
consciously indifferent toward the necessity of answering. Conscious indifference requires more
than mere negligence. Smith v. Babcock & Wilcox Constr. Co., 913 S.W.2d at 468; Ivy v.
Carrell, 407 S.W.2d 212, 213 (Tex. 1966). Edelia Hernandez testified at the first hearing that
she had handled two or three prior lawsuits against the company. Each time, she had turned the
suit over to a liability insurer, who provided a lawyer that answered the papers. Edelia's action
in this suit, which followed a pattern in previous lawsuits, shows that it was not Hernandez'
intention to suffer judgment by default. City of San Antonio v. Garcia, 243 S.W.2d 252, 254
(Tex. Civ. App.--San Antonio 1951, writ ref'd). 

 As to the Hotards' argument that a clause of the policy required Hernandez to pay
a one million dollar self-insured retention before the policy applied, we note that this requirement
applies to the total of covered losses during the policy period and that the declaration page lists
the retention as only one thousand dollars. For the reason mentioned above, even if the self-insured retention were one million dollars and no prior loss had been claimed, we would not
consider Hernandez consciously indifferent in seeking to have the insurer answer on its behalf. 
The Hotards finally argue that the policy negates any duty of Western Star to defend Hernandez. 
While the policy provides that the insured is solely responsible for defending any suit against it,
this provision is expressly subject to Western Star's election otherwise. The question whether
Hernandez should have relied on Western Star to answer, given this provision, is one of
reasonableness rather than conscious indifference. We conclude that Hernandez showed that its
failure to answer was not intentional or consciously indifferent.

 We next consider the second element required by Craddock, whether Hernandez
set up a meritorious defense. 133 S.W.2d at 126. A defendant sets up a meritorious defense by
alleging facts in its motion and supporting affidavits that, if true, would constitute a defense to the
cause of action asserted by the plaintiffs. Director, State Employees Workers' Compensation Div.
v. Evans, 889 S.W.2d 266, 270 (Tex. 1994); Ivy, 407 S.W.2d at 214.

 Hernandez alleged in its amended motion that Chris Hotard's own negligence
caused or contributed to causing the accident. Hernandez' attorney stated at the second hearing
that Joe Lewis, who had witnessed the accident, would testify if called that Chris Hotard failed
to keep a proper lookout and ran into Hernandez' truck, which had unavoidably overturned after
a mechanical failure. Hernandez' attorney stated that another witness, who had helped Chris
Hotard from his vehicle and spoken with him, would testify that the wrist injuries Chris attributed
to this accident were due to a previous accident and that, two days earlier, Chris' wrist had been
removed from a cast. The trial court then stated that it wished to limit the length of the hearing
and asked the Hotards' attorney whether he would stipulate that the witnesses would testify as
Hernandez represented. The Hotards' attorney replied that he did not consider Lewis' testimony
pertinent, that the Hotards did not controvert the element of meritorious defense, and that
presenting the evidence was Hernandez' choice and within the court's discretion.

 By conceding the admissibility of the proferred evidence, the Hotards effectively
stipulated to what the witnesses would say if called. Austin v. Austin, 603 S.W.2d 204, 206-07
(Tex. 1980). Controverting facts are not considered in determining whether the defendant has set
up a meritorious defense. Director, State Employees Workers' Compensation Div. v. Evans, 889
S.W.2d at 270; Ivy, 407 S.W.2d at 214. We conclude that the evidence Hernandez offered set
up a meritorious defense to the Hotards' claims. See Liepelt v. Oliveira, 818 S.W.2d 75, 77 (Tex.
App.--Corpus Christi 1991, no writ) (meritorious defense is one that would cause a different result
on retrial). 

 Finally, we consider the third element of Craddock, whether granting Hernandez'
motion to set aside would cause delay or injury to the Hotards. 133 S.W.2d at 126. Hernandez
alleged that granting its motion would not delay or injure the Hotards because Hernandez would
reimburse them for the cost of taking the default judgment and was prepared to go to trial at the
earliest available date. These allegations shifted the burden to the Hotards to prove injury. Cliff
v. Huggins, 724 S.W.2d 778, 779 (Tex. 1987); Angelo v. Champion Restaurant Equip. Co., 713
S.W.2d 96, 97-98 (Tex. 1986). Because the Hotards made no such proof, Hernandez has satisfied
this element.

 Having determined that Hernandez met each element of the Craddock test, we
sustain point of error one. This determination renders it unnecessary to address Hernandez'
remaining points of error. We reverse the judgment of the trial court and remand the cause for
a trial on the merits.


Before Justices Powers, Aboussie and Kidd

Reversed and Remanded

Filed: March 20, 1996

Do Not Publish

1. [1]  The trial court signed the default judgment on December 14, 1994, and Hernandez filed a
motion for new trial on January 11, 1995. The court held a hearing and signed an order
overruling the motion on February 2. On February 21, more than thirty days after the judgment
was signed, Hernandez filed a "second" motion for new trial, which the trial court heard and
overruled on March 3. Texas Rule of Civil Procedure 329b(b) states that "one or more amended
motions for new trial may be filed without leave of court before any preceding motion for new
trial filed by the movant is overruled and within thirty days after the judgment or other order
complained of is signed." In this case, the trial court, by holding a hearing on the amended
motion, gave leave to file it after the original motion was overruled and more than thirty days
after the judgment was signed. The court signed the order denying the amended motion before
its plenary power expired on March 6. We note that during its plenary power, the court could
have chosen to vacate the default judgment. Tex. R. Civ. P. 329b(e). We will therefore consider
the evidence adduced on the amended motion for new trial. But see L.B. Foster Co. v. Glacier
Energy, Inc., 714 S.W.2d 48, 48-49 (Tex. App.--San Antonio 1986, writ ref'd n.r.e.). 

 We next consider the second element required by Craddock, whether Hernandez
set up a meritorious defense. 133 S.W.2d at 126. A defendant sets up a meritorious defense by
alleging facts in its motion and supporting affidavits that, if true, would constitute a defense to the
cause of action asserted by the plaintiffs. Director, State Employees Workers' Compensation Div.
v. Evans, 889 S.W.2d 266, 270 (Tex. 1994); Ivy, 407 S.W.2d at 214.

 Hernandez alleged in its amended motion that Chris Hotard's own negligence
caused or contributed to causing the accident. Hernandez' attorney stated at the second hearing
that Joe Lewis, who had witnessed the accident, would testify if called that Chris Hotard failed
to keep a proper lookout and ran into Hernandez' truck, which had unavoidably overturned after
a mechanical failure. Hernandez' attorney stated that another witness, who had helped Chris
Hotard from his vehicle and spoken with him, would testify that the wrist injuries Chris attributed
to this accident were due to a previous accident and that, two days earlier, Chris' wrist had been
removed from a cast. The trial court then stated that it wished to limit the length of the hearing
and asked the Hotards' attorney whether he would stipulate that the witnesses would testify as
Hernandez represented. The Hotards' attorney replied that he did not consider Lewis' testimony
pertinent, that the Hotards did not controvert the element o