**Opinion issued February 25, 2025**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-23-00437-CV

_____

**DTA COMMUNITY MANAGEMENT SERVICES, INC. AND PARK LAKE TOWNHOMES ASSOCIATION, INC., Appellants**

**V.**

**BULLDOG BUILDERS & CONTRACTORS, LLC, Appellee**

---

**On Appeal from the 268th District Court**
**Fort Bend County, Texas**
**Trial Court Case No. 20-DCV-277061**

---

## MEMORANDUM OPINION

This appeal involves a breach-of-contract claim stemming from a terminated construction project. Appellees DTA Community Management Services, Inc. ("DTA") and Park Lake Townhomes Association, Inc. ("Park Lake") (collectively, the "Owners") hired Appellant Bulldog Builders & Contractors, LLC ("Bulldog")

to perform renovation work on their property. After the Owners terminated the project and canceled the contract, Bulldog sued, seeking its lost profits as damages.

The trial court granted summary judgment on liability, which is not contested here. Bulldog then moved for summary judgment on damages and attorney's fees. Bulldog presented its principal's affidavit in which he averred that Bulldog's lost profits were 40 percent of the contract price. The trial court entered summary judgment in Bulldog's favor, awarding it lost-profits damages, attorney's fees, and costs.

On appeal, the Owners challenge the trial court's award of lost-profits damages and attorney's fees. We reverse and remand.

## I. Background

Park Lake owns a residential real estate development in Missouri City, Texas ("the Property"). Park Lake hired DTA to manage the Property.

In March 2020, Park Lake entered into a written contract with Bulldog to perform renovation work at the Property generally involving replacing siding and painting. A DTA employee signed the contract on Park Lake's behalf, acting as Park Lake's agent. The contract stated that Park Lake would pay Bulldog $667,735 for its work.

Park Lake revoked the contract a few months later. Bulldog sued the Owners for breach of contract. After some discovery, Bulldog filed a motion for

2

summary judgment.  It sought summary judgment against DTA and Park Lake, claiming both were parties to the contract and liable for its breach.

The trial court granted the motion as to liability only.  Bulldog then filed an additional motion for summary judgment on damages and attorney's fees.  In this motion, Bulldog sought damages for its lost profits on the contract, asserting its lost profits were 40 percent of the $667,735 contract price, or $267,094.  Bulldog supported this motion with its principal's affidavit.  The principal made generalized statements about losses Bulldog had suffered when the Owners canceled the contract, including losses of "other business opportunities," "business relationships," and "good subcontractors," but did not make any statements regarding Bulldog's lost profits.

Bulldog set its motion for a hearing on May 1, 2023, a Monday.  At 7:40 p.m. on April 28, 2023, the Friday before the hearing, Bulldog filed a motion seeking leave to file a "corrected" version of the affidavit supporting its motion.  This corrected version of the affidavit contained an additional paragraph addressing Bulldog's lost profits:

> Unfortunately, in April 2022, my father passed away unexpectedly, and I took over running the company.  My father would have calculated the profit on this job.  With regard to [Bulldog's] profit margin on the contract with [the Owners], Bulldog's profit margin on a job the size of the one made the basis of the contract is typically 40-45% of the total contract amount.  That has always been the case since 2014.  Therefore, I can say with

3

certainty that Bulldog's profit margin on the contract at issue after paying materials and labor would have been at least 40% of the total amount of the contract.

The Owners moved to strike Bulldog's corrected affidavit on multiple grounds, including that it was untimely.

On May 1, 2023, following the hearing, the trial court granted Bulldog's motion for leave to file its corrected affidavit and its motion for summary judgment, ordering that Bulldog would recover from the Owners $267,094.00 in damages, $49,316.00 in attorney's fees, and $437.28 in court costs. The Owners now appeal.

## II.    Analysis

The Owners do not appeal the summary judgment on liability but challenge the summary judgment on damages and attorney's fees on three grounds. First, they argue Bulldog failed to prove its lost profits with reasonable certainty. Second, they argue the trial court abused its discretion by considering the corrected version of Bulldog's affidavit. And third, they argue the trial court erred by awarding attorney's fees.

### A.    Bulldog's lost-profit damages

In their first issue, the Owners argue the trial court erred in granting Bulldog's second summary-judgment motion because Bulldog failed to establish the amount of its lost profits with the requisite degree of certainty. They contend

4

the corrected affidavit that Bulldog filed is not sufficient to support an award of lost profits. We agree.

## 1. Standard of review

We review the trial court's grant of summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). In a traditional summary-judgment motion, such as the one Bulldog filed in this case, the movant has the burden to show that no genuine issue of material fact exists and that the trial court should grant judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harris Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). We must take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

## 2. Bulldog did not prove its lost-profits damages with reasonable certainty

The parties agree that Bulldog's lost profits are the appropriate measure of damages for the Owners' breach. Lost profits are damages for the loss of net income to a business. *Miga v. Jensen*, 96 S.W.3d 207, 213 (Tex. 2002). Recovery of lost profits does not require that the loss be susceptible to exact calculation. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992). But the injured party must do more than show that it suffered some lost profits. *Id.* To be recoverable, lost profits must be proven by competent evidence with reasonable

5

certainty. *Id.* This standard does not require that the party seeking lost-profit damages produce documents to support its claim, but "[a]s a minimum," any opinions or estimates of such damages must be based on "objective facts, figures, or data from which the amount of lost profits can be ascertained." *Id.* Conclusory or speculative evidence of lost profits cannot support an award. *Szczepanik v. First S. Trust Co.*, 883 S.W.2d 648, 649–50 (Tex. 1994).

Mere evidence that the plaintiff expected to make a profit within a certain range at a certain time is legally insufficient to show lost profits. *See id.* at 650. Recovery of lost profits must be predicated on one complete calculation. *Id.* at 649; *Glattly v. Air Starter Components, Inc.*, 332 S.W.3d 620, 631 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). "The plaintiff bears the burden of providing evidence supporting a single complete calculation of lost profits, which may often require certain credits and expenses." *Id.* This calculation must be based on net profits, not gross revenue or gross profits. *Kellmann v. Workstation Integrations, Inc.*, 332 S.W.3d 679, 684 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *see also Horizon Health Corp. v. Acadia Healthcare Co.*, 520 S.W.3d 848, 864 (Tex. 2017). "Where there is an established business, pre-existing profits may be used to evidence the amount of loss with reasonable certainty." *Stringer v. Perales*, No. 01-02-00281-CV, 2003 WL 1848594, at *5 (Tex. App.—Houston [1st Dist.] Apr. 10, 2003, pet. denied) (mem. op.) (citing *White v. S.W. Bell Tel. Co.*, 651 S.W.2d

6

260, 262 (Tex.1983)). Competent evidence of lost profits relating to a business's estimated profit margin can be proved by the testimony of an expert or the owner of the business. *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 876 (Tex. 2010).

Here, Bulldog presented its principal's corrected affidavit to prove its lost-profits damages. In it, the principal testified that he started the company with his father in 2014, and that his father had been "heading up" the Park Lake job with another Bulldog employee. The principal's father died in April 2022, at which point the principal "took over running the company." The principal stated that his father "would have calculated the profit on this job," which he described as "a large project with many complexities which required a lot of attention and resources from the company." The principal further testified that "Bulldog's profit margin on a job the size of the one made the basis of the contract is typically 40-45% of the total contract amount," and that "has always been the case since 2014." Based on the profit margins from these other jobs, the principal averred that he can "say with certainty that Bulldog's profit margin on the contract at issue after paying materials and labor would have been at least 40% of the total amount of the contract."

In considering whether the foregoing evidence proved Bulldog's lost-profits damages with reasonable certainty, our opinion in *Holmes v. Jetall Cos.* is

7

instructive. No. 01-15-00326-CV, 2016 WL 3662645 (Tex. App.—Houston [1st Dist.] July 7, 2016, pet. denied) (mem. op. on reh'g). In *Holmes*, we held that evidence more robust than Bulldog offered here was insufficient to support an award of lost-profits damages. *Id.* at *5–6. There, an experienced real-estate developer contracted with a landowner to buy a parcel of property on which the developer intended to build two townhouses "inside the loop" in Houston. *Id*. at *1, *5. The sale never closed, and the developer sued the landowner, seeking the lost profits it would have realized on the sale of the townhouses. *Id*. at *1. The developer's owner testified that the costs to build each townhouse would be "at least $800,000" based on "the market price of materials, labor, everything else associated with construction." *Id.* The developer's owner testified that he had 20 years' experience in the property business and that the developer had successfully built homes in Houston, including two townhouses inside the loop which it sold after receiving several offers. *Id.* The owner testified that the developer would be building the new townhouses based on the prior townhouses' design and he "expected to obtain $600,000 profit on each townhome." *Id*.

Notwithstanding the owner's experience building other townhouses in the same geographic market, we held this testimony was insufficient to support an award of lost-profits damages because, "[e]ven if we accept these general statements as his damage model, the statements are unsupported by any substantive

8

facts, do not identify what assumptions were made in deriving the numbers provided, and do not explain how any assumptions are reasonable." *Id.* at \*5. We rejected the developer's argument that the prior sale of two similar townhouses supplied the necessary details because there was no evidence showing that the prior sales were comparable, such as when the sales occurred. *Id.*

Similarly, Bulldog's principal did not supply sufficient information to establish that his assumptions are reasonable. Bulldog sought to prove its lost profits were "at least 40% of the total amount of the contract" after paying materials and labor, based on Bulldog's profit margins from unspecified prior jobs of similar "size." No information is given about these prior jobs, such as how many there were, where in Texas or elsewhere they occurred, or when they occurred (which could have been recently or almost one decade ago). Nor is there any information describing what is meant by the term "size," such as whether it refers to the dollar value or the nature and complexity of the prior jobs. For example, it is unknown if the prior jobs involved replacement of siding like the Park Lake job at issue, and if they involved similar numbers of workers and amounts of materials. The principal did not explain why the prior jobs are comparable to the Park Lake job for purposes of determining lost profits. However, he did state that the Park Lake job was "a large project with many complexities which required a lot of attention and resources from the company,"

making it even more important for him to establish why the prior jobs were appropriate comparisons.

Accordingly, although Bulldog offered a model for demonstrating the amount of its lost profits—a profit-margin model based on prior jobs of similar "size"—the evidence presented was conclusory and did not "demonstrate how the assumptions in the model are reasonable." *Id.* at \*4; *see also Phillips v. Carlton Energy Group, LLC*, 475 S.W.3d 265, 269 (Tex. 2015) ("[Plaintiff's lost-profits] experts projected that the costs of bringing the gas to market would be four times the value of the gas in the ground, but the evidence does not explain why that projection was reasonable."); *Univ. Gen. Hosp., LP v. Prexus Health Consultants, LLC*, 403 S.W.3d 547, 556 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (concluding evidence insufficient to support lost-profits damages because, among other reasons, there was no evidence the contract on which plaintiff would earn a 32% profit margin was sufficiently similar to the terminated contracts such that plaintiff "would earn the same profit margin on all three of them"). Conclusory or speculative evidence of lost profits cannot support an award. *See Szczepanik*, 883 S.W.2d at 649–50.

On appeal, Bulldog relies on *Keller v. Davis*, in which our sister court determined that a company owner's testimony about profit margins was sufficient to support lost-profits damages. 694 S.W.2d 355 (Tex. App.—Houston [14th Dist.]

1985, writ ref'd n.r.e.). But that case involved the company's lost use of a truck for a specific amount of time, a specific hourly rate for the truck's use, and a specific profit margin realized on the gross revenue earned by truck use. *Id.* at 357. Here, Bulldog sought to prove its lost profits based on profit margins earned on prior jobs that no evidence proved were sufficiently similar to the Park Lake job to make the comparison reasonable. *See Cargotec Corp. v. Logan Indus.*, No. 14-17-00213-CV, 2018 WL 6695806, at \*10 (Tex. App.—Houston [14th Dist.] Dec. 20, 2018, pet. denied) (mem. op.) ("Courts have rejected damages opinions predicated on assumptions made in internal projections or business plans not shown to be reasonable."). Hence, *Keller* is inapplicable.

We hold the trial court erred in granting summary judgment in favor of Bulldog on damages because Bulldog did not establish its entitlement to lost profits as a matter of law. We sustain the Owners' first issue.[1]

## B. Attorney's fees

In their third issue, the Owners argue that, because the trial court's summary judgment awarding lost-profit damages should be reversed, the summary judgment awarding $49,316 in attorney's fees pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code also should be reversed. *See* TEX. CIV. PRAC. & REM.

---

[1] Because we sustain this issue, we need not consider the Owners' second issue regarding the trial court's granting Bulldog leave to file the corrected affidavit. *See* TEX. R. APP. P. 47.1.

11

CODE § 38.001(b). We agree. Because we reverse the trial court's summary judgment on the amount of contract damages, we also reverse the award of fees and costs. *See In re Nalle Plastics Family Ltd. P'ship*, 406 S.W.3d 168, 173 (Tex. 2013) ("To recover attorney's fees under [TEX. CIV. PRAC. & REM. CODE § 38.001], a party must first prevail on the underlying claim *and* recover damages." (emphasis in original)).

We sustain the Owners' third issue.

**Conclusion**

We reverse the trial court's summary judgment on damages and attorney's fees. Under Rule 44.1(b), we "may not order a separate trial solely on unliquidated damages if liability is contested." *See* TEX. R. APP. P. 44.1(b). Thus, even though the Owners did not contest liability on appeal, we must also reverse the trial court's summary judgment as to liability[2] because damages are unliquidated and the Owners filed a general denial in the trial court.[3] *See id.*; *Estrada v. Dillon*, 44 S.W.3d 558, 562 (Tex. 2001) ("A party's failure to present on appeal an additional

---

[2] When the trial court entered a final judgment by resolving the sole remaining issues in the case, i.e., damages and attorney's fees, the trial court's prior summary-judgment order merged into the final judgment and may be considered on appeal. *See Bonsmara Nat. Beef Co., LLC v. Hart of Tex. Cattle Feeders, LLC*, 603 S.W.3d 385, 390 (Tex. 2020) ("When a trial court renders a final judgment, the court's interlocutory orders merge into the judgment[.]")

[3] *Vara v. Vara*, 558 S.W.3d 782, 786 (Tex. App.—El Paso 2018, pet. denied) ("Unliquidated claims include damages for . . . lost profits.").

12

discrete challenge to liability when that party challenges damages does not defeat the plain language of rule 44.1(b) proscribing a separate trial on unliquidated damages when liability is contested" in the trial court.); *Rosales v. Williams*, No. 01-09-00454-CV, 2010 WL 457536, at *6 (Tex. App.—Houston [1st Dist.] Feb. 11, 2010, no pet.) (mem. op.) (concluding that, under Rule 44.1(b) and *Estrada*, reversal of summary judgment on contractual damages also required reversal of summary judgment on liability because appellants contested liability in the trial court by filing a general denial).

We thus reverse the trial court's summary judgments in their entirety and remand for further proceedings.

Andrew Johnson
Justice

Panel consists of Justices Rivas-Molloy, Johnson, and Dokupil.