COURT
OF APPEALS
SECOND
DISTRICT OF TEXAS
FORT WORTH
NO.
2-02-069-CV
 
MICHAEL RONNEY VINCENT                                                            APPELLANT
V.
AUDREY VINCENT                                                                           
APPELLEE
------------
FROM THE 362ND DISTRICT COURT OF DENTON
COUNTY
------------
MEMORANDUM
OPINION(1)
------------
Appellant Michael Ronney Vincent appeals from the trial court's granting of a
divorce by default judgment in favor of Appellee Audrey Vincent. We affirm.
Appellee sued Appellant for divorce on June 6, 2001. Appellant was served
with citation and a copy of the divorce petition on or about June 13, 2001, and
did not file an answer or otherwise appear in the case. The trial court entered
a default judgment on November 16, 2001. The judgment ordered Appellant to pay
Appellee $600 per month as spousal maintenance, with payments to continue until
Appellee remarries or dies, Appellant reaches the age of sixty-five, or upon
further court order. In addition, the trial court awarded to Appellee a portion
of Appellant's employee pension fund benefits earned during the marriage.
Appellant subsequently filed a motion for new trial alleging that his failure
to file an answer was not intentional or the result of conscious indifference
but was due to mistake or accident; that he had a meritorious defense; and that
a new trial would not injure Appellee. After hearing counsels' arguments, the
trial court overruled the motion. In four issues on appeal, Appellant challenges
the trial court's ruling on the motion for new trial.
For a default judgment to be set aside and a new trial granted, the defendant
must demonstrate that his failure to appear was not intentional or the result of
conscious indifference, but rather due to accident or mistake; the motion for
new trial must set up a meritorious defense; and the motion must show that the
granting of the new trial will cause no delay or injury to the plaintiff. Craddock
v. Sunshine Bus Lines, 134 Tex. 388, 133 S.W.2d 124, 126 (1939). This court
has interpreted "conscious indifference" to mean a failure to take
some action which would seem indicated to a person of reasonable sensibilities
under the same circumstances. Johnson v. Edmonds, 712 S.W.2d 651,
652-53 (Tex. App.--Fort Worth 1986, no writ). The defaulting defendant has the
burden of proving that all three elements of the Craddock test are met
before a trial court is required to grant a motion for new trial. Sunrizon
Homes, Inc. v. Fuller, 747 S.W.2d 530, 532 (Tex. App.--San Antonio 1988,
writ denied) (op. on reh'g). The trial court has discretion to grant a new trial
after a default judgment. Id.; see also Johnson, 712 S.W.2d at
652; Butler v. Dal Tex Mach. & Tool Co., Inc., 627 S.W.2d 258, 259
(Tex. App.--Fort Worth 1982, no writ).
In his first two issues, Appellant challenges the trial court's failure to
grant his motion for new trial on the grounds that it abused its discretion in
limiting evidence only to the first Craddock element. 133 S.W.2d at
126; see Johnson, 712 S.W.2d at 652. He contends that the trial court
improperly awarded to Appellee some of his separate property in the form of
household furnishings and a portion of the pension plan.
We begin by examining the first element of the Craddock test.
Appellant asserted in his motion for new trial and his supporting affidavit that
his failure to file an answer was not intentional or the result of conscious
indifference, but was the result of accident or mistake. On direct examination
at the hearing, Appellant testified that he received the citation and a copy of
the divorce petition, which included the address and phone number of Appellee's
attorney, Brad Freeman. Appellant said that after receiving the petition, he
contacted Freeman and "talked to him extensively" about the property
matters in the petition. Appellant said he proposed a settlement of the divorce,
and he wrote a settlement proposal letter to Freeman, which was entered into
evidence. Later, Freeman withdrew and Appellee employed Brotherton & Davis
as new counsel. Appellant testified that he never received a copy of the motion
to substitute counsel and that he never contacted Brotherton & Davis. When
asked whether he knew Appellee had obtained new counsel, Appellant said,
"Yes, I do now." In his affidavit and at the hearing, Appellant
expressed his belief that he was in a negotiation process with Freeman. In his
affidavit, Appellant stated that he believed that he and Freeman "were
negotiating and discussing the resolution of this divorce and that things would
be worked out and presented to the Court."
On cross-examination, Appellant testified that he contacted Freeman because
he had read the citation and it stated that he needed to get an attorney or file
an answer within twenty-one days. Appellant also testified that he understood he
needed to contact an attorney or file an answer within the time specified on the
citation. "[T]hat's why I contacted Brad Freeman. . . . I thought we were
negotiating." He acknowledged, however, that Freeman was not his attorney,
and that he understood Freeman was representing Appellee. Appellant testified
that in his June 15, 2001 settlement proposal letter to Freeman, he told Freeman
that if he had not heard back from him by Thursday, June 21, 2001, at nine
o'clock a.m., he would have to retain his own counsel "to demand half of
everything." Appellant said that after his initial phone call with Freeman
and after sending the proposal letter, Appellant never received a response from
Freeman or heard from him, until two months later when Appellant contacted
Freeman again and discovered he no longer represented Appellee. Appellant said
he did not ask Freeman whether Appellee had other counsel out of
"stupidity."
Appellant also testified that when he had this conversation with Freeman, he
was residing at the Sun Suites Motel in Lewisville, and that he received mail
there. While at the Sun Suites, he received a carbon copy of a letter from his
pension fund that was addressed to Brotherton & Davis, Appellee's attorney.
The letter discussed how much money Appellant had vested in the fund on that
date. Appellant testified that after receiving the carbon copy of the letter, he
called the pension fund to ask it to make a correction to the information
contained in the letter, but he did not ask who the addressee, Brotherton &
Davis, was because "I could care less. . . . I did not know who they were,
and I did not care who they were."
We analogize the facts in this case to the those presented to us in Butler
and in Johnson. In Butler, the defendant admitted that he
received and read the citation but claimed that he did not understand it and
that he simply put the citation aside on his desk. Butler, 627 S.W.2d
at 260. No evidence existed that the defendant attempted to get help in
understanding the citation. Id. The defendant did nothing until he
received notice of the default judgment. Id. On appeal, we held that
the defendant's failure to file an answer was the result of negligence and
conscious indifference, and that the trial court did not abuse its discretion in
refusing to grant a new trial. Id. Similarly, in Johnson, the
defendant contended that his failure to answer was a mistake because he did not
understand the nature of the citation served upon him. Johnson, 712
S.W.2d at 652. After being served, the defendant read the suit papers and put
them away. Id. He did not seek help or make any inquiry about the
importance of the papers he had received. Id. On appeal, we held that
these acts by the defendant constituted evidence of conscious indifference
sufficient to support the trial court's refusal to grant a new trial. Id.
at 652-53.
As noted above, conscious indifference is a failure to take some action which
would seem indicated to a person of reasonable sensibilities under the same
circumstances. Johnson, 712 S.W.2d at 652-53. However, an appellant's
conclusory allegations that his failure to answer was not the result of
conscious indifference are insufficient. Holt Atherton Indus., Inc. v. Heine,
835 S.W.2d 80, 83 (Tex. 1992); Folsom Invs., Inc. v. Troutz, 632 S.W.2d
872, 875 (Tex. App.--Fort Worth 1982, writ ref'd n.r.e.). To determine if the
defendant's factual assertions are controverted, the court looks to all the
evidence in the record. Dir., State Employees Workers' Comp. Div. v. Evans,
889 S.W.2d 266, 269 (Tex. 1994). When the non-movant presents evidence at the
hearing for new trial tending to show intentional or consciously indifferent
conduct, it becomes a question for the trial court to determine. Young v.
Kirsch, 814 S.W.2d 77, 80-81 (Tex. App.--San Antonio 1991, no writ); Jackson
v. Mares, 802 S.W.2d 48, 50 (Tex. App.--Corpus Christi 1990, writ denied).
Appellee filed affidavits with her response to Appellant's motion for new
trial. In Freeman's affidavit, he stated that after Appellant left the June 15
settlement proposal letter at his office, he hand-delivered a letter on June 21,
2001 to the Sun Suites Motel where Appellant was staying, enclosing the Motion
to Withdraw as Counsel and Substitute New Counsel. On July 20, 2001, the letter
was returned unopened to him through the mail as undeliverable because it did
not have any postage on it. Freeman did not know whether the motel or Appellant
had placed it in the mail to be returned to him. Freeman stated that he had not
had any contact with Appellant since June 15, 2001, and had Appellant contacted
his office, he would have informed Appellant of Appellee's new counsel and
instructed him to contact Brotherton & Davis.
Like the Butler and Johnson appellants, Appellant knew
Appellee had filed for divorce and had received a copy of the petition. In
contrast to the defendants in Butler and Johnson, Appellant
presented new trial evidence showing that he understood the importance of the
papers served upon him before the default judgment was taken, and had read the
citation telling him to respond within twenty-one days. Although Appellant
initially took some action by contacting Freeman, he testified that Freeman
never responded to his settlement offer and he did not hear from Freeman again.
Appellant knew that Freeman no longer represented Appellee. Although Appellant
had no more contact with Freeman, and knew the divorce was still pending, he
made no inquiry, and did not seek further help or advice about negotiating a
settlement or filing an answer. When Appellant received copies of a letter
addressed to Appellee's new counsel, Brotherton & Davis, he never inquired
as to the importance of that firm because he "did not care." We hold
that such acts are evidence of conscious indifference sufficient to support the
finding of the trial court; therefore, Appellant has not met the first element
of Craddock, and the trial court did not abuse its discretion in
overruling his motion for new trial. See Craddock, 133 S.W.2d at 126; see
also Johnson, 712 S.W.2d at 652-53. We need not address the remaining Craddock
elements. We overrule Appellant's first and second issues.
In his third and fourth issues, Appellant contends that the trial court erred
in awarding attorney's fees and spousal maintenance to Appellee because these
awards were not supported by the pleadings. In a default judgment, a plaintiff
may not have relief for transactions or occurrences that are not in pleadings of
which the defendant had fair notice. Downer v. Aquamarine Operators, Inc., 701
S.W.2d 238, 241-42 (Tex. 1985), cert. denied, 476 U.S. 1159 (1986); Mullen
v. Roberts, 423 S.W.2d 576, 579 (Tex. 1968) ("[A] default judgment . .
. must accord with the pleadings."); City of Holliday v. Wood, 914
S.W.2d 175, 178 (Tex. App.--Fort Worth 1995, no writ). Appellee's pleadings
requested attorney's fees if no settlement was reached and the case went to
trial, and also requested general relief. Appellant contends that because the
trial court granted a default judgment and the case was not actually
"tried," as the petition says, that he was not on notice that he would
have to pay attorney's fees in the event of default. This contention is without
merit. Appellee's prayer for general relief alone was sufficient to authorize
the award of attorney's fees directly to the attorney. Kirk v. Kirk, 805
S.W.2d 929, 932 (Tex. App.--Fort Worth 1991, writ denied); Goldberg v.
Goldberg, 392 S.W.2d 168, 171 (Tex. Civ. App.--Fort Worth 1965, no writ).
Further, in his motion for new trial, Appellant stated that he was "willing
to reimburse [Appellee] for all reasonable expenses incurred in getting the
default judgment." We overrule Appellant's third issue.
In addition, Appellee requested spousal maintenance in her petition. She
requested that she be paid post-divorce maintenance for a reasonable period of
time in accordance with the family code. See, e.g., Tex. Fam. Code Ann.
§ 8.051 (Vernon Supp. 2003). Appellant's contention that the trial court's
award of spousal maintenance was not supported by the pleadings also has no
merit. We overrule his fourth issue.
Having overruled all of Appellant's issues, we affirm the trial court's
judgment.
 
                                                                      
PER CURIAM
 
PANEL F: HOLMAN, J; CAYCE, C.J.; and DAY, J.
DELIVERED: July 31, 2003

1. See Tex. R. App. P. 47.4.