VINCENT V. VINCENT

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-069-CV

MICHAEL RONNEY VINCENT APPELLANT

V.

AUDREY VINCENT APPELLEE

------------

FROM THE 362ND DISTRICT COURT OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Michael Ronney Vincent appeals from the trial court’s granting of a divorce by default judgment in favor of Appellee Audrey Vincent.  We affirm.

Appellee sued Appellant for divorce on June 6, 2001.  Appellant was served with citation and a copy of the divorce petition on or about June 13, 2001, and did not file an answer or otherwise appear in the case.  The trial court entered a default judgment on November 16, 2001.  The judgment ordered Appellant to pay Appellee $600 per month as spousal maintenance, with payments to continue until Appellee remarries or dies, Appellant reaches the age of sixty-five, or upon further court order.  In addition, the trial court awarded to Appellee a portion of Appellant’s employee pension fund benefits earned during the marriage.

Appellant subsequently filed a motion for new trial alleging that his failure to file an answer was not intentional or the result of conscious indifference but was due to mistake or accident; that he had a meritorious defense; and that a new trial would not injure Appellee.  After hearing counsels’ arguments, the trial court overruled the motion.  In four issues on appeal, Appellant challenges the trial court’s ruling on the motion for new trial.

For a default judgment to be set aside and a new trial granted, the defendant must demonstrate that his failure to appear was not intentional or the result of conscious indifference, but rather due to accident or mistake; the motion for new trial must set up a meritorious defense; and the motion must show that the granting of the new trial will cause no delay or injury to the plaintiff.  
Craddock v. Sunshine Bus Lines,
 134 Tex. 388, 133 S.W.2d 124, 126 (1939).  This court has interpreted “conscious indifference” to mean a failure to take some action which would seem indicated to a person of reasonable sensibilities under the same circumstances.  
Johnson v. Edmonds,
 712 S.W.2d 651, 652-53 (Tex. App.—Fort Worth 1986, no writ).  The defaulting defendant has the burden of proving that all three elements of the 
Craddock
 test are met before a trial court is required to grant a motion for new trial.  
Sunrizon Homes, Inc. v. Fuller, 
747 S.W.2d 530, 532 (Tex. App.—San Antonio 1988, writ denied) (op. on reh’g).  The trial court has discretion to grant a new trial after a default judgment.  
Id.
;
 see also Johnson,
 712 S.W.2d at 652; 
Butler v. Dal Tex Mach. & Tool Co., Inc., 
627 S.W.2d 258, 259 (Tex. App.—Fort Worth 1982, no writ).

In his first two issues, Appellant challenges the trial court's failure to grant his motion for new trial on the grounds that it abused its discretion in limiting evidence only to the first
 Craddock
 element.  133 S.W.2d at 126; 
see Johnson,
 712 S.W.2d at 652.  He contends that the trial court improperly awarded to Appellee some of his separate property in the form of household furnishings and a portion of the pension plan.

We begin by examining the first element of the 
Craddock
 test.  Appellant asserted in his motion for new trial and his supporting affidavit that his failure to file an answer was not intentional or the result of conscious indifference, but was the result of accident or mistake.  On direct examination at the hearing, Appellant testified that he received the citation and a copy of the divorce petition, which included the address and phone number of Appellee’s attorney, Brad Freeman.  Appellant said that after receiving the petition, he contacted Freeman and “talked to him extensively” about the property matters in the petition.  Appellant said he proposed a settlement of the divorce, and he wrote a settlement proposal letter to Freeman, which was entered into evidence.  Later, Freeman withdrew and Appellee employed Brotherton & Davis as new counsel.  Appellant testified that he never received a copy of the motion to substitute counsel and that he never contacted Brotherton & Davis.  When asked whether he knew Appellee had obtained new counsel, Appellant said, “Yes, I do now.”  In his affidavit and at the hearing, Appellant expressed his belief that he was in a negotiation process with Freeman.  In his affidavit, Appellant stated that he believed that he and Freeman “were negotiating and discussing the resolution of this divorce and that things would be worked out and presented to the Court.”

On cross-examination, Appellant testified that he contacted Freeman because he had read the citation and it stated that he needed to get an attorney or file an answer within twenty-one days.  Appellant also testified that he understood he needed to contact an attorney or file an answer within the time specified on the citation.  “[T]hat’s why I contacted Brad Freeman. . . .  I thought we were negotiating.”  He acknowledged, however, that Freeman was not his attorney, and that he understood Freeman was representing Appellee.  Appellant testified that in his June 15, 2001 settlement proposal letter to Freeman, he told Freeman that if he had not heard back from him by Thursday, June 21, 2001, at nine o’clock a.m., he would have to retain his own counsel “to demand half of everything.”  Appellant said that after his initial phone call with Freeman and after sending the proposal letter, Appellant never received a response from Freeman or heard from him, until two months later when Appellant contacted Freeman again and discovered he no longer represented Appellee.  Appellant said he did not ask Freeman whether Appellee had other counsel out of “stupidity.”

Appellant also testified that when he had this conversation with Freeman, he was residing at the Sun Suites Motel in Lewisville, and that he received mail there.  While at the Sun Suites, he received a carbon copy of a letter from his pension fund that was addressed to Brotherton & Davis, Appellee’s attorney.  The letter discussed how much money Appellant had vested in the fund on that date.  Appellant testified that after receiving the carbon copy of the letter, he called the pension fund to ask it to make a correction to the information contained in the letter, but he did not ask who the addressee, Brotherton & Davis, was because “I could care less. . . .  I did not know who they were, and I did not care who they were.”  

We analogize the facts in this case to the those presented to us in 
Butler
 and in 
Johnson
.  In 
Butler, 
the defendant admitted that he received and read the citation but claimed that he did not understand it and that he simply put the citation aside on his desk.  
Butler, 
627 S.W.2d at 260.  No evidence existed that the defendant attempted to get help in understanding the citation. 
 Id.
  The defendant did nothing until he received notice of the default judgment.  
Id.
  On appeal, we held that the defendant's failure to file an answer was the result of negligence and conscious indifference, and that the trial court did not abuse its discretion in refusing to grant a new trial.
  Id. 
 Similarly, in 
Johnson,
 the defendant contended that his failure to answer was a mistake because he did not understand the nature of the citation served upon him. 
 Johnson,
 712 S.W.2d at 652.  After being served, the defendant read the suit papers and put them away. 
 Id.
  He did not seek help or make any inquiry about the importance of the papers he had received. 
 Id.
  On appeal, we held that these acts by the defendant constituted evidence of conscious indifference sufficient to support the trial court's refusal to grant a new trial.
  Id.
 at 652-53. 

As noted above, conscious indifference is a failure to take some action which would seem indicated to a person of reasonable sensibilities under the same circumstances.  
Johnson,
 712 S.W.2d at 652-53.  However, an appellant’s conclusory allegations that his failure to answer was not the result of conscious indifference are insufficient.
  Holt Atherton Indus., Inc. v. Heine,
 835 S.W.2d 80, 83 (Tex. 1992);
 Folsom Invs., Inc. v. Troutz, 
632 S.W.2d 872, 875 (Tex. App.—Fort Worth 1982, writ ref'd n.r.e.).  To determine if the defendant's factual assertions are controverted, the court looks to all the evidence in the record.  
Dir., State Employees Workers’ Comp. Div. v. Evans,
 889 S.W.2d 266, 269 (Tex. 1994).  When the non-movant presents evidence at the hearing for new trial tending to show intentional or consciously indifferent conduct, it becomes a question for the trial court to determine.
  Young v. Kirsch,
 814 S.W.2d 77, 80-81 (Tex. App.—San Antonio 1991, no writ); 
Jackson v. Mares,
 802 S.W.2d 48, 50 (Tex. App.—Corpus Christi 1990, writ denied).  

Appellee filed affidavits with her response to Appellant’s motion for new trial.  In Freeman’s affidavit, he stated that after Appellant left the June 15 settlement proposal letter at his office, he hand-delivered a letter on June 21, 2001 to the Sun Suites Motel where Appellant was staying, enclosing the Motion to Withdraw as Counsel and Substitute New Counsel.  On July 20, 2001, the letter was returned unopened to him through the mail as undeliverable because it did not have any postage on it.  Freeman did not know whether the motel or Appellant had placed it in the mail to be returned to him.  Freeman stated that he had not had any contact with Appellant since June 15, 2001, and had Appellant contacted his office, he would have informed Appellant of Appellee’s new counsel and instructed him to contact Brotherton & Davis.

Like the 
Butler 
and 
Johnson
 appellants, Appellant knew Appellee had filed for divorce and had received a copy of the petition. In contrast to the defendants in
 Butler 
and 
Johnson,
 Appellant presented new trial evidence showing that he understood the importance of the papers served upon him before the default judgment was taken, and had read the citation telling him to respond within twenty-one days.  Although Appellant initially took some action by contacting Freeman, he testified that Freeman never responded to his settlement offer and he did not hear from Freeman again.  Appellant knew that Freeman no longer represented Appellee.  Although Appellant had no more contact with Freeman, and knew the divorce was still pending, he made no inquiry, and did not seek further help or advice about negotiating a settlement or filing an answer.  When Appellant received copies of a letter addressed to Appellee’s new counsel, Brotherton & Davis, he never inquired as to the importance of that firm because he “did not care.”  We hold that such acts are evidence of conscious indifference sufficient to support the finding of the trial court; therefore, Appellant has not met the first element of 
Craddock,
 and the trial court did not abuse its discretion in overruling his motion for new trial.
  See Craddock, 
133 S.W.2d at 126; 
see also Johnson,
 712 S.W.2d at 652-53.  We need not address the remaining 
Craddock
 elements.  We overrule Appellant’s first and second issues.

In his third and fourth issues, Appellant contends that the trial court erred in awarding attorney’s fees and spousal maintenance to Appellee because these awards were not supported by the pleadings.  In a default judgment, a plaintiff may not have relief for transactions or occurrences that are not in pleadings of which the defendant had fair notice.  
Downer v. Aquamarine Operators, Inc., 
701 S.W.2d 238, 241-42 (Tex. 1985), 
cert. denied,
 476 U.S. 1159 (1986); 
Mullen v. Roberts,
 423 S.W.2d 576, 579 (Tex. 1968) (“[A] default judgment . . . must accord with the pleadings.”); 
City of Holliday v. Wood,
 914 S.W.2d 175, 178 (Tex. App.—Fort Worth 1995, no writ).  Appellee’s pleadings requested attorney's fees if no settlement was reached and the case went to trial, and also requested general relief.  Appellant contends that because the trial court granted a default judgment and the case was not actually “tried,” as the petition says, that he was not on notice that he would have to pay attorney’s fees in the event of default.  This contention is without merit.  Appellee’s prayer for general relief alone was sufficient to authorize the award of attorney's fees directly to the attorney. 
 Kirk v. Kirk, 
805 S.W.2d 929, 932 (Tex. App.—Fort Worth 1991, writ denied); 
Goldberg v. Goldberg, 
392 S.W.2d 168, 171 (Tex. Civ. App.—Fort Worth 1965, no writ).  Further, in his motion for new trial, Appellant stated that he was “willing to reimburse [Appellee] for all reasonable expenses incurred in getting the default judgment.”  We overrule Appellant’s third issue. 

In addition, Appellee requested spousal maintenance in her petition.  She requested that she be paid post-divorce maintenance for a reasonable period of time in accordance with the family code.  
See, e.g.,
 Tex. Fam. Code Ann. 
§ 8.051 (Vernon Supp. 2003).  Appellant’s contention that the trial court’s award of spousal maintenance was not supported by the pleadings also has no merit.  We overrule his fourth issue.

Having overruled all of Appellant’s issues, we affirm the trial court’s judgment.

PER CURIAM

PANEL F: HOLMAN, J; CAYCE, C.J.; and DAY, J.

DELIVERED: July 31, 2003

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.