Affirmed and Memorandum Opinion filed May 31, 2007








Affirmed and Memorandum
Opinion filed May 31, 2007.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00740-CV

____________

 

IN THE INTEREST OF A.A.M. AND
C.E.M., Minor Children

 



 

On Appeal from the 257th
District Court

Harris County, Texas

Trial Court Cause No. 03-00158

 



 

M E M O R A N D U M   O P I N I O N

This is an appeal from the trial court=s order
transferring the right to designate the primary residence of the minor children
A.A.M. and C.E.M. from their mother, appellant Cynthia Moore n/k/a Cynthia
Williams, to their father, appellee James Moore.  We affirm the trial court=s judgment.

I.  Factual and Procedural
Background








On
December 4, 2003, the trial court signed an agreed decree of divorce ending the
Moore marriage.   Pursuant to the agreed decree, Cynthia and James were
appointed joint managing conservators of their two children, A.A.M. and
C.E.M..  Cynthia was given the right to determine the children=s primary residence.  The decree
included a standard possession order and ordered James to pay child support in
the amount of $150 per month.

Only a
few months later, on February 20, 2004, Cynthia filed a filed a petition to
modify the parent-child relationship, alleging that there had been a material
and substantial change in circumstances since the date of the divorce and
sought an increase in child support.  James filed a general denial and a
counter-petition in which he asked the trial to court to grant him the right to
designate the children=s primary residence and order Cynthia to pay child support. 
James=s pleadings included a request for
temporary orders and were supported by an affidavit in accordance with Texas
Family Code section 156.102.  See Tex.
Fam. Code Ann. ' 156.102 (Vernon Supp. 2006) (governing suits to modify
the designation of the person having the exclusive right to designate the
primary residence of a child filed within one year of a previous designation).

After a
three-day hearing, the trial court issued a temporary order transferring the
right to designate the primary residence of the children from Cynthia to James
and ordered Cynthia to pay child support.  A nonjury trial on the merits began
on April 1, 2005.

A large portion of the testimony at
trial centered around the many arguments and disputes that James and Cynthia
had when transferring possession of the children.  These disputes were
typically verbal and often within earshot of the children.  For instance, James
testified that the first such incident occurred in December 2003, shortly after
he moved into an apartment following the divorce.  He testified that Cynthia
showed up at the apartment while the children were inside and began yelling and
cursing at him about his recent move.  According to James, the children were
afraid and skittish after this incident.  

James also testified that in May
2004, Cynthia slapped him and hit him in the back of the head because she
believed he was fifteen minutes late returning the children.  According to
James, he had arrived at Cynthia=s home to return the children at 6:00
p.m. as required, but Cynthia was not there, so he returned fifteen minutes
later.  James filed a police report concerning this incident, but charges were not
filed.  








James further testified that while he
was returning the children on Father=s Day of 2004, he was physically
attackedCin the children=s presenceCby Cynthia or by Cynthia=s mother or sister.  The incident
left a scratch on James=s neck that was photographed and admitted as evidence at
trial.  According to James, this altercation lasted nearly two hours.  He
testified that he could not leave the premises on this occasion because Cynthia=s sister blocked his truck with her
vehicle.  Cynthia offered the testimony of her brother-in-law, Sheriff Dwayne
Benn, that none of the four visitation exchanges he witnessed were
confrontational.   

James also testified that in May
2004, the children told him that Cynthia had moved from her home at 404 San
Jacinto to a new home.  James testified that Cynthia did not inform him of this
move until June 2004, and instead continued to transfer possession of the
children at the 404 San Jacinto residence during May and June.  Although
Cynthia admitted she initially did not inform James that she had sold the home
at 404 San Jacinto, she contends the sale occurred in July 2004, and testified
she did not give James notice of the move because the children were in his
possession that month.

Regarding the children=s safety and welfare, James testified
that he observed and videotaped the children being left alone at Horace
Williams=s[1]
apartment.  It is undisputed that Williams has a prior felony conviction for
possession of marijuana; however, the conviction is twenty-five years old. 
Cynthia admitted that the children were left alone in Williams=s apartment for ten minutes on
occasions when Williams needed to go to work and Cynthia had yet to return to
the apartment.  James also observed and videotaped Cynthia leaving the children
at a swimming pool without parental supervision; Cynthia testified that she had
asked another woman at the pool to watch the children while she went to the
bathroom.   








James also offered more specific
testimony concerning the children=s physical and emotional well-being. 
According to James, he learned that A.A.M. had told Cynthia that she wanted to
live with her father, and Cynthia had responded by hitting A.A.M. in the mouth.
James testified that after this incident he decided to take the children to
counseling.  When the children began living with James, they began counseling
sessions with Carol Stevens,[2] a licensed
professional counselor and social worker.

Stevens testified that by the time of
trial she had seen each child ten times.  According to Stevens, the children
told her things which caused her to be concerned for their emotional
well-being, but not their physical safety, when they were with their mother. 
Specifically, she said that Cynthia questioned A.A.M. at length about her
desire to live with her father.  Stevens also echoed James=s testimony about an incident in
which Cynthia struck A.A.M., reopening a prior wound to her lip, and threw
C.E.M. onto a sofa.  Ms. Stevens contacted Child Protective Services after she
learned of these allegations.  Cynthia denied slapping A.A.M. on the face or
throwing C.E.M.  CPS concluded that the risk factors to the children were
controlled and closed its investigation.

On April 29, 2005, the trial court
found that a modification was in the best interest of the children. 
Accordingly, it entered an order transferring to James the exclusive right to
establish the primary residence of the children and requiring Cynthia to pay
child support and provide medical support.  No findings of fact were requested
or entered, and Cynthia timely filed a notice of appeal. 

II.  Issues Presented








In her first issue, Cynthia challenges
the legal and factual sufficiency of the evidence to support the trial court=s implied findings that (a) the
children=s living environment with her had a
detrimental effect on the their emotional welfare, and (b) the best interests
of the children required a change in the terms of the joint managing
conservatorship.[3]  In her
second issue, Cynthia contends that the trial court had Ainsufficient information for a proper
exercise of discretion.@ 

III. 
Analysis

A. 
Standards of Review

Because the sufficiency of the
evidence and abuse of discretion standards of review often overlap in family
law cases, appellate courts employ a hybrid analysis.  In re D.S., 76
S.W.3d 512, 516 (Tex. App.CHouston [14th Dist.] 2002, no pet.).  Under the overarching
standard, the question of conservatorship of a child is left to the sound
discretion of the trial court when it sits as trier of fact.  Zeifman v.
Michels, 212 S.W.3d 582, 587 (Tex. App.CAustin 2006, pet. denied).  The trial
court is in the best position to observe the demeanor and personalities of the
witnesses and can Afeel@ the forces, powers, and influences that cannot be discerned
by merely reading the record.  Id.  








Within this
overarching standard, we engage in a two‑pronged inquiry to determine
whether the trial court (1) had sufficient information on which to exercise its
discretion, and (2) erred in its application of discretion.  See id. at
588.  The traditional sufficiency review comes into play with regard to the
first question, and those standards are discussed infra.  See id.  With
regard to the second question, we determine whether, based on the elicited
evidence, the trial court made a reasonable decision.  Id.  Stated
inversely, the appellate court must conclude that the trial court=s decision was
neither arbitrary nor unreasonable.  Id.  Thus, we resolve the second
question by determining whether the trial court=s findings
constitute an abuse of discretion.

Because our
inquiry both begins and ends with the abuse of discretion standard, we begin by
describing this standard of review, and then discuss the legal and factual
sufficiency standards of review that pertain to the question of whether the
trial court had sufficient information on which to exercise its discretion.  We
then set forth the law governing the modification at issue before analyzing
appellant=s issues. 

1.         Abuse of Discretion

A trial court=s order modifying a joint managing
conservatorship will not be disturbed on appeal unless the complaining party
can show a clear abuse of discretion.  Gillespie v. Gillespie, 644
S.W.2d 449, 451 (Tex. 1982).  The test for abuse of discretion is whether the
trial court acted in an arbitrary and unreasonable manner, or whether it acted
without reference to any guiding principles.  Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 242 (Tex. 1985), cert. denied, 476
U.S. 1159, 106 S. Ct. 2279, 90 L. Ed. 2d 721 (1986). The fact that a trial
court may decide a matter within its discretionary authority in a different
manner from an appellate court in a similar circumstance does not demonstrate
an abuse of discretion.  Downer, 701 S.W.2d at 241B42.  Thus, an abuse of discretion
does not occur as long as some evidence of a substantive and probative
character exists to support the trial court=s decision.  Id.     

2.         Legal
Sufficiency








Because the appellant attacks the
legal sufficiency of an adverse finding on an issue on which she did not have
the burden of proof, she must demonstrate on appeal that there is no evidence
to support the adverse finding.  See Croucher v. Croucher, 660 S.W.2d
55, 58 (Tex. 1983).  The evidence is legally insufficient only if (1) the
record discloses a complete absence of evidence of a vital fact, (2) the court
is barred by rules of law or of evidence from giving weight to the only
evidence offered to prove a vital fact, (3) the evidence offered to prove a
vital fact is no more than a mere scintilla, or (4) the evidence establishes
conclusively the opposite of a vital fact.  Uniroyal Goodrich Tire Co. v.
Martinez, 977 S.W.2d 328, 334 (Tex. 1998).  In determining whether there is
legally sufficient evidence to support the trial court=s exercise of discretion, we consider
evidence and inferences favorable to the finding if a reasonable factfinder
could, and disregard evidence contrary to the finding unless a reasonable
factfinder could not.  City of Keller v. Wilson, 168 S.W.3d 802, 828
(Tex. 2005).

3.         Factual
Sufficiency

In analyzing a challenge to the
factual sufficiency of the evidence, we examine the entire record to determine
if the trial court=s finding is so against the great weight and preponderance of
the evidence as to be manifestly unjust.  See Manon v. Tejas Toyota, Inc.,
162 S.W.3d 743, 752B53 (Tex. App.CHouston [14th Dist.] 2005, no pet.).  In an appeal from a
bench trial, findings of fact are the equivalent of jury answers to special
issues.  Lindsey v. Lindsey, 965 S.W.2d 589, 591 (Tex. App.CEl Paso 1998, no pet.).  When
findings of fact and conclusions of law are not properly requested and none are
filed, the judgment of the trial court must be affirmed if it can be upheld on
any legal theory that finds support in the evidence.  Reach Group, L.L.C.,
v. Angelina Group, 173 S.W.3d 834, 837 (Tex. App.CHouston [14th Dist.] 2005, no pet.). 
In the absence of findings and conclusions, the judgment of the trial court
implies all necessary fact findings in support of the judgment.  Holt Atherton
Indus., Inc. v. Heine, 835 S.W.2d 80, 83B84 (Tex. 1992).  As the reviewing
court, we cannot substitute our conclusions for those of the trial court if
there is sufficient competent evidence of probative force to support the trial
court=s findings.  See id. 

4.         Governing
Law








A trial court may modify an order
that provides for the appointment of a conservator of a child if modification
would be in the best interest of the child.  Tex.
Fam.Code Ann. '' 156.101, 153.002 (Vernon 2006); In the Interest of V.L.K.,
24 S.W.3d 338, 342 (Tex. 2000).  In addition to this primary requirement,
the circumstances of the child, a conservator, or other party affected by the
existing order must have materially and substantially changed since the
rendition of the order before a modification will be warranted.  See Tex. Fam.Code Ann. ' 156.101 (Vernon
2006).

In determining the
child=s best interest,
courts may consider, inter alia: 

(a)     the desires of the child, 

(b)     the emotional and physical needs of the child now
and in the future, 

(c)       the
emotional and physical danger to the child now and in the future, 

(d)       the
parental abilities of the individuals seeking custody, 

(e)       the
programs available to assist these individuals to promote the best interest of
the child, 

(f)        the
plans for the child by these individuals or by the agency seeking custody, 

(g)       the
stability of the home or proposed placement, 

(h)       the
acts or omissions of the parent which may indicate that the existing parent‑child
relationship is not a proper one, and 

(i)        any
excuse for the acts or omissions of the parent. 

Holley v. Adams, 544 S.W.2d 367, 371B72 (Tex. 1976).

B.        Sufficiency of the Evidence

Section 156.102 of
the Texas Family Code requires an affidavit to be filed by the person seeking
modification if it has been less than a year since the order was rendered. Tex. Fam. Code Ann. ' 156.102 (Vernon
2006).  This affidavit, as is relevant to this case, must contain an
allegation, supported by facts, that the child=s present
environment may endanger the child=s physical health
or significantly impair the child=s emotional
development.  See id.  Cynthia does not dispute that James complied with
this requirement. 








Similarly, Cynthia
does not challenge the trial court=s express or
implied finding that the circumstances of a party affected by the order have
materially and substantially changed since the final divorce decree was signed
on December 4, 2003.  Instead, she contends that the evidence does not support
the trial court=s finding that the children=s living
environment with her Ahad a detrimental affect [sic] on the
children=s emotional
welfare.@  We disagree.

          First,
the trial court heard Carol Stevens testify that she was concerned for the
children=s emotional
well-being when they were with their mother.  In particular, Stevens testified
that Cynthia questioned A.A.M. at length about her desire to live with her dad
and other issues.  Ms. Stevens also echoed James=s testimony that
Cynthia slapped A.A.M. and threw C.E.M. onto a couch.  Pictures that the
children drew for Ms. Stevens, which were entered into evidence, depicted
Cynthia hitting them and drinking beer.

In addition, James
testified extensively about arguments the children witnessed and overheard
during custody exchanges.  According to James, A.A.M. told him that Cynthia
struck her, causing a prior injury to bleed.  Finally, James described
instances in which the children had been left without parental supervision at a
swimming pool, and had been left without any adult supervision at Horace
Williams=s apartment.  

Under the
applicable standard of review, we conclude there is sufficient evidence to
sustain the trial court=s determination that the children=s living
environment with Cynthia had a detrimental affect on their emotional welfare. 
We therefore overrule Cynthia=s first and second issues in part, and
turn our attention to the trial court=s assessment of
the best interests of the children.  

C.        Application
of Best Interest Factors

Because findings of fact and
conclusions of law were neither requested nor filed, we presume that the trial
court made all necessary findings to support its judgment.  Heine, 835
S.W.2d at 83B84. 








We begin our analysis by addressing
the first Holley factor, the desires of the children.  Although Cynthia
testified that the children told her they wanted to live with her, Carol
Stevens testified that A.A.M. and C.E.M. told her they preferred living with
their father.  Stevens also testified that Cynthia and sometimes Horace
Williams questioned the children about this issue, but the children feared
their mother=s response to hearing their preference.  Ms. Stevens stated that behavior
such as Cynthia=s questioning caused her concern for the children=s emotional well-being.  She further
opined that children should be able to love one parent without having to
justify that to the other. 

We next consider the emotional or
physical needs of the children.  The record indicates that Cynthia had
previously been held in contempt for nonpayment of child support, although she
brought the payments current after she sold the house at 404 San Jacinto.  In
addition, James testified that at least on one occasion, Cynthia did not
provide the children with adequate clothing and did not feed them adequately on
other occasions.  The testimony concerning James=s care of the children showed no such
deficiencies.  Thus, the trial court could have inferred that James is better
able to meet the children=s emotional and physical needs.  

There was also testimony that if the
children were to resume living with their mother, they would have to attend
school in the Cy-Fair district, rather than the LaPorte district in which they
had attended school when they last lived with their mother.  The trial court
reasonably could have considered this an additional destabilizing influence
that could have a detrimental affect on the children=s social and academic development. 

Moreover, Horace Williams testified
that Cynthia is forbidden by court order from driving, and she relies on
Williams and her sister for transportation.  This is further evidence from
which the trial court could reasonably conclude that James, who is under no
such restrictions, is better able to meet the children=s needs. 

The trial court may also have
considered the emotional and physical danger to the children now and in the
future.  In addition to Stevens=s testimony that she was concerned for the children=s emotional well-being, James
produced evidence that Cynthia had left the children without parental
supervision at a swimming pool, and had left them completely unattended at
Horace Williams=s home. 








The trial court also heard evidence
that Cynthia moved without giving notice of the move as required by the final
divorce decree. 

Considered together, the evidence
weighs strongly in James=s favor.  On this record, which includes the trial court=s implied findings of fact, we cannot
say that the trial court abused its discretion by awarding James the right to
designate the children=s primary residence.  To the contrary, the record supports
the determination that this modification is in the best interest of the
children. 

Accordingly, we overrule appellant=s issues and affirm the trial court=s judgment.

                                                                              

 

 

 

                                                         
/s/     Eva M. Guzman

Justice

 

 

 

 

Judgment rendered and Memorandum
Opinion filed May 31, 2007.

Panel consists of Justices Anderson,
Hudson, and Guzman.

 

 

 









[1]  Horace Williams was Cynthia=s boyfriend during the summer of 2004 and Cynthia=s husband at the time of trial. 





[2]  This person=s
name is also spelled ACarole Stephens@ in
the record. 





[3]  Although Cynthia=s
stated issues present challenges to Afindings
of fact@ contained in the trial court=s modification order, findings of fact are required to
be filed separately from and not recited in a judgment.  Tex. R. Civ. P. 299a.  In the absence
of a requirement that specific findings of fact be included in the trial court=s order, findings included in a judgment cannot form
the basis of a claim on appeal.  Frommer v. Frommer, 981 S.W.2d 811, 813B14 (Tex. App.CHouston
[1st Dist.] 1998 pet. dism=d); see also
In re E.A.C., 162 S.W.3d 438, 442 (Tex. App.CDallas 2005, no pet.) (AThe legislature
made it clear in enacting the family code that, unless expressly provided
otherwise, suits affecting the parent-child relationship are to be governed by
the same rules of procedure as those generally applied in other civil cases.@) (citing Tex.
Fam. Code Ann. ' 109.002(a) (Vernon Supp. 2006)).  Moreover, even if
the recitation of this finding were sufficient to preserve a complaint on
appeal, the particular language that Cynthia challenges appears to address a
requirement for modification that was formerly found in section 156.104 of the
Family Code, but that was eliminated by an amendment in 2001.  Compare
Act approved April 24, 1995, 74th Leg., R.S., ch. 20, ' 1, 1995 Tex. Gen. Laws, 113, 173B74, amended by Act approved June 16, 2001, 77th
Leg., R.S., ch. 289, ' 8, 2001 Tex. Gen. Laws 3108, 3110 (permitting
modification of custody when, inter alia, retention of a sole managing
conservatorship would be detrimental to the welfare of the child) (emphasis
added) with Tex. Fam. Code Ann.
' 156.101 (Vernon Supp. 2006) (permitting modification
of prior court order if circumstances have substantially changed and the
modification would be in the child=s
best interest, but containing no requirement that the trial court find current
conditions have a detrimental effect on the child=s welfare).  Nevertheless, because much of Cynthia=s argument implies a challenge to the sufficiency of
the evidence supporting the implied finding that the modification is in the
children=s best interest, we interpret her stated issues to
present this argument.