**AFFIRMED; Opinion Filed August 5, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-18-00529-CV

**BULLET TRAP, L.L.C. F/K/A BULLET TRAP, INC., Appellant**
**V.**
**WATERPROOF POSITIVE, LLC D/B/A ENERGY ROOFING SOLUTIONS, Appellee**

**On Appeal from the 199th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 199-04389-2016**

## MEMORANDUM OPINION

Before Justices Myers, Molberg, and Carlyle
Opinion by Justice Myers

Bullet Trap, L.L.C. f/k/a Bullet Trap, Inc. appeals the judgment in favor of Waterproof

Positive, LLC d/b/a Energy Roofing Solutions (ERS). Bullet Trap brings three issues contending

(1) the evidence was legally and factually insufficient to support the jury's verdict on ERS's lost

profits; (2) the trial court erred by awarding attorney's fees to ERS under section 38.001 of the

Texas Civil Practice and Remedies Code because Bullet Trap converted from a corporation to a

limited liability company the day the jury rendered its verdict; and (3) the trial court erred by

awarding ERS attorney's fees for opposing Bullet Trap's counterclaims. We affirm the trial

court's judgment.

### BACKGROUND

Bullet Trap is a shooting range in Plano, Texas owned by Christian Putnam. Putnam was

also the president and part owner of the Frisco Gun Club. Brandon Johnson was vice president for

marketing of the Frisco Gun Club, and he also worked at Bullet Trap. Ernest Arnesen owned a roofing company, ERS. Johnson and Arnesen attended the same church, and they knew one another.

In 2016, a hailstorm damaged Bullet Trap's roof causing the roof to leak. After talking to Johnson, Arnesen agreed to look at Bullet Trap's roof. Arnesen inspected the roof and saw it had sustained significant hail damage. As Arnesen and Johnson were talking in front of Bullet Trap, Putnam drove up. Arnesen told Putnam that the roof had suffered significant damage, and Arnesen advised Putnam to file a claim with his insurer. Arnesen told Putnam that his company might be able to replace Bullet Trap's roof for the amount of the insurance proceeds, and Putnam signed a contract with ERS.

The contract provided that Bullet Trap would file a claim with its insurer for the hail damage, and ERS would provide information supporting a finding of damage to the roof. If the insurance company accepted the damage claim, ERS agreed "to perform the work approved by the Insurance Company for an amount not to exceed all insurance proceeds received by [Bullet Trap] in settlement of its claim." Bullet Trap promised to "retain ERS as the exclusive roofing contractor to perform the Work as approved by the Insurance Company" and to "pay to ERS the Proceeds upon [Bullet Trap's] receipt of same." When Putnam signed the contract, neither Putnam nor Arnesen was aware that the deductible on Bullet Trap's insurance policy was $25,000.

The insurance adjuster inspected the roof with Arnesen, and Arnesen pointed out the hail damage. The adjuster agreed that the roof needed to be replaced due to the hail, and he also determined the hail damaged the HVAC units and the rain gutters and that leaks in the roof had damaged the interior. Arnesen prepared an estimate of the cost to replace the roof and the gutters and determined the cost would be $212,354.08. The adjuster accepted that estimate and also provided insurance payments for damage to the HVAC units and damage to the interior of Bullet

–2–

Trap. The insurer paid Bullet Trap $201,903.29 for the damage to the roof, gutters, HVAC, and interior. After reduction for depreciation and the deductible, the insurance payment attributable to the roof was about $155,000. The insurance policy provided that the insurer would pay Bullet Trap the depreciated amount, $37,100.75, after the roof was repaired.

Putnam believed that under the contract with ERS, Bullet Trap would not have to pay the deductible. Arnesen suggested that they split the deductible and that Putnam use the portions of the insurance payment for the interior damage and HVAC damage to pay the deductible. Putnam refused to use those portions of the insurance payment for the deductible, and he believed Arnesen had promised that Bullet Trap would not have to spend any money other than the insurance payment attributable to the roof damage to pay for the roof replacement. Putnam sent Arnesen a letter purporting to terminate the contract.

ERS sued Bullet Trap for breach of contract. Bullet Trap filed counterclaims for breach of contract, fraudulent inducement, and violations of the Texas Deceptive Trade Practice–Consumer Protection Act (DTPA). A jury determined that Bullet Trap had breached the contract and that ERS's damages for lost profits were $79,919.73. The jury found against Bullet Trap on its counterclaims. The trial court entered judgment for ERS, awarding ERS the damages found by the jury. The court also awarded ERS attorney's fees under section 38.001 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8).

## SUFFICIENCY OF THE EVIDENCE

In its first issue, Bullet Trap contends the trial court erred by not granting its motion for new trial, motion to modify the judgment, and motion for judgment notwithstanding the verdict because the evidence was legally and factually insufficient to support the jury's finding on lost profits. The jury determined ERS's damages for lost profits were $79,919.73.

–3–

When reviewing the legal sufficiency of the evidence, we consider all the evidence before the jury, crediting evidence in support of the verdict if reasonable jurors could, and disregarding evidence contrary to the verdict unless reasonable jurors could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 823, 827 (Tex. 2005); *Morris v. Wells Fargo Bank, N.A.*, 334 S.W.3d 838, 842 (Tex. App.—Dallas 2011, no pet.). If there is more than a scintilla of evidence to support the finding, the evidence is legally sufficient. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998). When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983). If the evidence furnishes a reasonable basis for differing conclusions by reasonable minds as to the existence of a vital fact, then there is legally sufficient evidence, more than a scintilla, to support the fact. *Id.* When reviewing the factual sufficiency of the evidence, we examine all the evidence and set aside a finding only if it is so contrary to the evidence as to be clearly wrong and unjust. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998); *Cameron v. Cameron*, 158 S.W.3d 680, 683 (Tex. App.—Dallas 2005, pet. denied). In conducting our review of both the legal and factual sufficiency of the evidence, we are mindful that the jury, as fact finder, was the sole judge of the credibility of the witnesses and the weight to be given their testimony. *City of Keller*, 168 S.W.3d at 819; *Hinkle v. Hinkle*, 223 S.W.3d 773, 782 (Tex. App.—Dallas 2007, no pet.). We may not substitute our judgment for the fact finder's, even if we would reach a different answer on the evidence. *See Maritime Overseas Corp.*, 971 S.W.2d at 407; *Hinkle*, 223 S.W.3d at 782.

"Lost profits are damages for the loss of net income to a business and, broadly speaking, reflect income from lost business activity, less expenses that would have been attributable to that

activity." *Examination Mgmt. Servs., Inc. v. Kersh Risk Mgmt., Inc.*, 367 S.W.3d 835, 840 (Tex. App.—Dallas 2012, no pet.). Texas law concerning recovery of lost profits is well settled.

> Recovery for lost profits does not require that the loss be susceptible of exact calculation. However, the injured party must do more than show that they suffered some lost profits. The amount of the loss must be shown by competent evidence with reasonable certainty. What constitutes reasonably certain evidence of lost profits is a fact intensive determination. As a minimum, opinions or estimates of lost profits must be based on objective facts, figures, or data from which the amount of lost profits can be ascertained. Although supporting documentation may affect the weight of the evidence, it is not necessary to produce in court the documents supporting the opinions or estimates.

*Holt Atherton Indus., Inc. v. Heine,* 835 S.W.2d 80, 84 (Tex.1992) (citations omitted); *see ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 876 (Tex. 2010) (quoting *Holt Atherton*). "Reasonable certainty" of lost profits is not shown when the profits claimed to be lost "are largely speculative, as from an activity dependent on uncertain or changing market conditions, or on chancy business opportunities, or on promotion of untested products or entry into unknown or unviable markets, or on the success of a new and unproven enterprise." *Tex. Instruments, Inc. v. Teletron Energy Mgmt., Inc.*, 877 S.W.2d 276, 279 (Tex. 1994). "The calculation of lost profits must be based on net profits, not gross revenues." *Examination Mgmt. Servs.*, 367 S.W.3d at 840 (citing *Holt Atherton*, 835 S.W.2d at 83 n.1 (Tex. 1992)).

To prove its lost profits, ERS used the following calculation:

| | |
|---|---|
| Roof replacement amount approved by insurance company | $211,262.01 |
| Gutters/Downspout Repair amount approved by [ins. co.] | <u>$2,854.94</u> |
| Total Insurance Approved Amount: | $214,116.95 |

<u>Less Materials and Labor</u>

| | | |
|---|---|---|
| Materials (See attached) | $58,193.23 | |
| Tax (on materials) | $4,800.94 | |
| Skytrac/heavy equipment | $4,800.00 | |
| Labor | $21,200.00 | |
| Warranty | $1,450.00 | |
| | | –$90,444.17 |

–5–

| Less variable overhead costs [1] | –$43,753.05 |
|---|---|
| Damages: | **$79,919.73** |

The jury found ERS's damages were $79,919.73.

Bullet Trap argues ERS failed to prove it was profitable, and that the evidence was insufficient to support the cost of the materials, the "Skytrac/heavy equipment," and the variable costs.

### Profit & Loss Statement

Bullet Trap argues the evidence is insufficient because ERS failed to show its business was profitable. ERS presented its profit-and-loss statement for 2016. The statement showed ERS had a net income for 2016 of –$10,468.80. Arnesen testified the statement was prepared for tax purposes and was not a true picture of ERS's profitability. Arnesen testified he and his wife were ERS's only employees and that they took profits from the company through being paid their salary and payroll taxes of $234,000 per year. Adding those amounts back into the profits shows ERS had a profit of at least $200,000. ERS also leased the cars Arnesen and his wife used, paid some of their home expenses because the company operated out of their home, and paid for some of their meals. Arnesen testified he thought ERS's profitability in 2016 was "over $300,000." We conclude the 2016 profit-and-loss statement and Arnesen's testimony are legally and factually sufficient to show ERS's profitability in 2016.

### Cost of Materials

Bullet Trap argues ERS failed to present sufficient evidence of what the cost of materials would have been. In 2016, ERS ordered roofing materials from one supplier, RSG. Bullet Trap declared the contract terminated before ERS ordered the materials for Bullet Trap's roof, so ERS

---

[1] Arnesen testified to two calculations for variable costs. The first calculation did not include insurance as a variable cost, which made the variable costs $39,338 and Bullet Trap's damages $84,334.78. After Bullet Trap's counsel cross-examined Arnesen about whether ERS's insurance was a variable cost, Arnesen recalculated the variable costs to include insurance. With insurance included in the variable costs, the variable costs were $43,753.05 and ERS's damages were $79,919.73. The jury found this amount as ERS's damages.

did not have a quote from RSG for what the roofing materials would have cost. In order to prove at trial what the cost of the materials would have been in September 2016, ERS asked the materials supplier it used at that time, SPEC, to provide a quote. At trial, ERS presented a quote from SPEC stating the cost of the materials in September 2016 would have been $58,193.23 plus tax of $4,800.94. Bullet Trap argues the SPEC quote "is speculative and uncorroborated, making it legally insufficient to form a basis for ERS' lost profits calculation."

Bullet Trap argues the SPEC quote is insufficient evidence of the cost of materials for the Bullet Trap roof because ERS would have used RSG and not SPEC to supply the materials in September 2016. Bullet Trap asserts the prices from the companies were not equivalent because Arnesen testified one of the reasons ERS switched to SPEC was because SPEC provided "great material prices." Arnesen testified he asked SPEC to provide "a higher bid" in order to keep the calculation of ERS's profits "conservative." He also testified that he was in the roofing business and that the prices SPEC quoted for September 2016 were "the fair market value of these . . . materials." Arnesen stated he expected the jury to believe SPEC's quote was "a legitimate quote." Bullet Trap presented no evidence showing SPEC's quote was an inaccurate measure of the cost of the roofing materials.

We conclude Arnesen's testimony and SPEC's quote constituted "objective facts, figures, or data" of the cost of materials. *Holt Atherton*, 835 S.W.2d at 84.

### Insurance as Variable Cost

Arnesen testified that the cost of insurance for replacing Bullet Trap's roof was a fixed cost and not a variable cost. However, he provided alternative calculations for ERS's lost damages based upon it being either a fixed cost or a variable cost. The jury found the amount of lost profits equal to the calculation with insurance as a variable cost. *See* note 1, *supra*.

Bullet Trap argues, "Given [Arnesen's] demonstrated inability to correctly distinguish fixed costs from variable costs, the jury did not have competent, objective evidence from which to determine any lost profits of ERS attributable to a breach of contract by Bullet Trap." Arnesen provided an alternative calculation for lost profits if the jury concluded that insurance was a variable cost. Bullet Trap does not dispute the cost of the insurance or the calculation with insurance included as a variable cost. Nor does Bullet Trap explain why Arnesen's testimony and initial calculation of insurance as a fixed cost made his testimony about lost profits incompetent.

**Forklift Costs**

ERS's lost-profits calculation included an expense of $4,800 for "Skytrac/heavy equipment." Arnesen testified that expense was for "a large fork-lift to get the materials on the roof" and that ERS would have paid $4,800 for its use. At trial, Bullet Trap did not dispute the necessity of the expense or what the cost would have been to use a forklift for the project. Bullet Trap presented no evidence of a different amount for the cost of the forklift. During its cross-examination of Arnesen, Bullet Trap did not ask Arnesen the basis for this expense.[2] On appeal, Bullet Trap asserts the evidence is insufficient to support this expense because "[l]ost profits must be based on objective facts or data, not just the subjective opinion of ERS' owner, who had an undeniable interest in the outcome." Bullet Trap argues that "[b]ecause ERS failed to explain the basis or source of any equipment expense of $4,800, the jury lacked competent evidence to determine ERS' lost profits as set forth in Arnesen's testimony and depicted in ERS' written calculation." Arnesen had been in the commercial roofing business since 2003, and his company, ERS, had been in business since 2014 replacing roofs on commercial buildings. Thus, the evidence shows Arnesen had a basis for the determination of the forklift expense. ERS did not have "to

---

[2] The only question Bullet Trap asked Arnesen about "Skytrac/heavy equipment" was whether it was a crane.

Q. . . . And this SkyTrac heavy equipment. That's a crane, my understanding?

A. Yes. It's not a —it's just a large forklift.

produce in court the documents supporting the opinions or estimates." *Holt Atherton*, 835 S.W.2d at 84. No evidence shows that Arnesen's testimony was his "subjective opinion," that he lacked a basis for that determination, or that the statement of the cost for the forklift was inaccurate. Bullet Trap was free to challenge this expense when it cross-examined Arnesen, but it did not do so.

We conclude ERS showed the amount of its lost profits "by competent evidence with reasonable certainty." *Holt Atherton*, 835 S.W.2d at 84. Bullet Trap has not shown the evidence is legally or factually insufficient to support the jury's finding of ERS's lost profits. We overrule Bullet Trap's first issue.

## ATTORNEY'S FEES

Bullet Trap brings two issues contending the trial court erred by awarding ERS its attorney's fees. "For more than a century, Texas law has not allowed recovery of attorney's fees unless authorized by statute or contract." *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310 (Tex. 2006). In its second issue, Bullet Trap contends the trial court erred by awarding ERS any attorney's fees under section 38.001 of the Texas Civil Practice and Remedies Code. In its third issue, Bullet Trap contends the trial court erred by awarding ERS attorney's fees for opposing Bullet Trap's counterclaims.

## Section 38.001

In its second issue, Bullet Trap contends the trial court erred by awarding ERS any attorney's fees under section 38.001 of the Texas Civil Practice and Remedies Code. Section 38.001 provides, "A person may recover reasonable attorney's fees *from an individual or corporation*, in addition to the amount of a valid claim and costs, if the claim is for: … (8) an oral or written contract." TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (emphasis added). This Court has stated, "Under the plain language of section 38.001, a trial court cannot order limited liability partnerships, limited liability companies, or limited partnerships to pay attorney's fees."

*CBIF Ltd. P'ship v. TGI Friday's Inc.*, No. 05-15-00157-CV, 2017 WL 1455407, at \*25 (Tex. App.—Dallas Apr. 21, 2017, pet. denied) (mem. op.).

On the first day of trial, the parties told the court they had "agreed to stipulate to have the determination of attorneys' fees recoverable, to submit that to the Court for factual determination and ruling after trial." During the jury trial on August 28, 29, and 30, 2017, the trial court admitted evidence that Bullet Trap was a corporation, including Bullet Trap's articles of incorporation and its franchise tax statement. Putnam testified before the jury that Bullet Trap was a corporation. On August 30, the jury found in jury question 1 that "Bullet Trap, Inc. fail[ed] to comply with the Agreement."

The day after the trial concluded, ERS filed its first motion for award of attorney's fees. Bullet Trap did not file a response to the motion. At the hearing on the motion, held on October 4, 2017, more than a month after the jury verdict, Bullet Trap told the court and ERS that on August 30, 2017, the day the jury found Bullet Trap breached the contract, it converted from a corporation to a limited liability company (LLC). Bullet Trap argued that because it was no longer a corporation, ERS could not recover its attorney's fees from Bullet Trap under section 38.001. Bullet Trap offered into evidence an exhibit that its attorney described as "a printoff from the Secretary of State website showing that Bullet Trap, in fact, during the pendency of litigation was converted over to a[n] LLC."[3] ERS's attorney objected to the document, stating, "We're here today solely on attorney fees. That's not been produced to us. We have no notice of it. We have no discovery of the facts." The trial court voiced concern about admitting evidence that contradicted the undisputed evidence at the jury trial that Bullet Trap was a corporation and

---

[3] This document was not made part of the reporter's record for the October 4 hearing, and it is not clear whether it otherwise appears in the record.

contradicted the jury's finding that "Bullet Trap, Inc." breached the contract. The court stated, "[T]he Court will sustain the objection to" Bullet Trap's exhibit.

After this hearing, ERS filed an amended motion for award of attorney's fees that segregated the attorney's fees applicable to ERS's breach-of-contract claim from the fees applicable only to its opposing Bullet Trap's counterclaims. Bullet Trap filed a response to this motion, asserting its conversion to an LLC meant that the trial court could not order it to pay ERS's attorney's fees under section 38.001. Bullet Trap attached to the response documents concerning its conversion from a corporation to an LLC. At the hearing on the amended motion for award of attorney's fees, the court declined to hear further argument about Bullet Trap's conversion to an LLC. Bullet Trap did not re-offer the document that the court excluded at the October 4 hearing that it was an LLC, nor did it offer into evidence the documents attached to its response to the amended motion for award of attorney's fees. The trial court signed the final judgment the same day awarding ERS its requested attorney's fees. The trial court also made findings of fact and conclusions of law about the award of attorney's fees, including that "Bullet Trap, Inc. is a Texas Corporation."

After the trial court signed the final judgment, Bullet Trap filed a joint motion for new trial, motion to modify the judgment, and motion for judgment notwithstanding the verdict. Bullet Trap asserted it was an LLC and therefore could not be ordered to pay ERS's attorney's fees under section 38.001. At the hearing on the motion for new trial, Bullet Trap did not offer any evidence. The trial court did not expressly rule on this motion, and the motion for new trial and motion to modify the judgment were overruled by operation of law. *See* TEX. R. CIV. P. 329b(c).

Bullet Trap asserts in its brief that "the record confirms unequivocally that Bullet Trap was a limited liability company" when the trial court signed the final judgment ordering Bullet Trap to pay ERS's attorney's fees. Although the documents attached to Bullet Trap's response to ERS's

amended motion for award of attorney's fees may show Bullet Trap was an LLC, those documents were not admitted into evidence. Instead, the record shows the trial court sustained ERS's objections to the admission of evidence of Bullet Trap's conversion to an LLC the only time it was offered, which was at the hearing on ERS's first motion for award of attorney's fees. At the subsequent hearings, Bullet Trap did not offer into evidence any documents or other evidence showing it was an LLC.

Bullet Trap asserts the trial court erred at the hearing on ERS's first motion for award of attorney's fees by sustaining ERS's objection to Bullet Trap's evidence that it was an LLC. "Whether to admit or exclude evidence is within the trial court's sound discretion." *Morale v. State*, 557 S.W.3d 569, 573 (Tex. 2018). A trial court abuses its discretion when it acts "without reference to any guiding rules and principles." *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). "Another way of stating the test is whether the act was arbitrary or unreasonable." *Id.* at 242. We must uphold the trial court's evidentiary ruling if there is any legitimate basis for it. *Owens–Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). On appeal, ERS argues the trial court abused its discretion by allowing ERS to present evidence of its fees but not allowing Bullet Trap to present evidence of its conversion from a corporation to an LLC. Bullet Trap asserts that if it was prohibited from presenting evidence of the conversion because it did not present that evidence during the jury trial, then ERS should have been prohibited from presenting evidence of the amount of its attorney's fees because it did not present that evidence in the jury trial. We disagree. Before trial, the parties told the court they stipulated to having the trial court determine attorney's fees. The hearing on the first motion to award attorney's fees was pursuant to that stipulation. The parties had made no agreement to allow Bullet Trap to present evidence of a change of form. Bullet Trap cites no authority that would require the trial court to admit this evidence. *See* TEX. R. APP. P. 38.1(i) (appellant's brief must

–12–

include "argument for the contentions made, with appropriate citations to authorities and to the record"). We conclude Bullet Trap has not shown the trial court abused its discretion by sustaining ERS's objection to Bullet Trap's evidence of its LLC conversion.

Bullet Trap argues that any error from the exclusion of its evidence at the hearing on the first motion to award attorney's fees "was compounded at the second hearing, where, despite ERS making no objection to Bullet Trap's proffered evidence, the trial court outright refused to consider the issue on the basis that she had 'already ruled on that.'" Contrary to Bullet Trap's assertion, it never proffered any evidence at the hearing on the amended motion for award of attorney's fees. Instead, Bullet Trap's counsel stated he "renew[ed] our objection on the fact that the defendant is no longer a corporation, it is an LLC." Bullet Trap did not proffer any evidence at that hearing. Bullet Trap argues that the documents attached to its response to the amended motion for award of attorney's fees constituted evidence before the court. At the hearing, on the amended motion, Bullet Trap did not offer the documents attached to its motion into evidence, nor did it even mention them. Bullet Trap referred to its response as "supplemental briefing" and did not tell the court that its response contained evidence it wanted the court to consider. We conclude Bullet Trap has not shown it proffered or that the trial court admitted any evidence at the hearing on ERS's amended motion that Bullet Trap was an LLC and not a corporation.

Bullet Trap also argues ERS offered no evidence that Bullet Trap was a corporation. At the hearing on ERS's first motion for award of attorney's fees, when Bullet Trap asserted it was an LLC, ERS's counsel reminded the trial court of the evidence introduced at trial showing Bullet Trap was a corporation. That evidence was Bullet Trap's articles of incorporation, its franchise tax report, and Putnam's testimony that Bullet Trap was a corporation. Bullet Trap did not object to the trial court's consideration of that evidence.

We conclude Bullet Trap has not shown the trial court erred by ordering Bullet Trap to pay ERS's attorney's fees under section 38.001. We overrule Bullet Trap's second issue.

**Segregation of Attorney's Fees**

In its third issue, Bullet Trap contends the trial court erred by awarding ERS attorney's fees for ERS's attorney's services relating to Bullet Trap's counterclaims for breach of contract, fraud, and violations of the DTPA. The trial court did not require ERS to segregate the fees relating to the counterclaims from the fees relating to its breach-of-contract suit. However, ERS filed an amended motion for award of attorney's fees specifying the fees that related solely to Bullet Trap's counterclaims.

A party who is entitled to recover attorney's fees incurred under one claim must segregate those fees from any fees that "relate solely to a claim for which such fees are unrecoverable." *Tony Gullo Motors*, 212 S.W.3d at 313. However, any fees for services that advance both a recoverable and an unrecoverable claim need not be segregated. *Id.* at 313–14. Also, a plaintiff who is entitled to fees on a claim may recover fees for legal services opposing defenses that the plaintiff had to overcome to prevail on its claim. *Id.* at 314. "By the same token, when a defendant asserts a counterclaim that the plaintiff must overcome in order to fully recover on its contract claim, the attorneys' fees necessary to defeat that counterclaim are likewise recoverable." *7979 Airport Garage, L.L.C. v. Dollar Rent A Car Sys., Inc.*, 245 S.W.3d 488, 507 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (citing *Varner v. Cardenas*, 218 S.W.3d 68, 69 (Tex. 2007) (per curiam)); *see Hagan v. Pennington*, No. 05-18-00010-CV, 2019 WL 2521719, at *9 (Tex. App.—Dallas June 19, 2019, no pet. h.) (mem. op.) (quoting *7979 Airport Garage*).

Unless authorized by a contract, attorney's fees are not recoverable for defending against a claim for breach of contract, fraud, or violation of the DTPA.[4] *See Tony Gullo Motors*, 212 S.W.3d at 304 (attorney's fees not recoverable in fraud case); TEX. BUS. & COM. CODE ANN. § 17.50(d) (prevailing plaintiff–consumer entitled to attorney's fees for DTPA violation); TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (prevailing claimant entitled to attorney's fees for breach of contract). In this case, Bullet Trap asserted counterclaims against ERS for breach of contract, fraud, and violations of the DTPA. ERS's attorney stated that $2,310 of ERS's legal fees related only to the counterclaims. ERS's attorney stated these legal fees were for "reviewing the Counterclaim and Motion for Leave to File the Counterclaim, opposing the motion, and attending a hearing on the Motion," as well as "reviewing, researching, and revising [Bullet Trap's] proposed jury charge." ERS argued it was entitled to recover those fees because it had to defeat the counterclaims to recover fully on its breach-of-contract claim.

Bullet Trap's counterclaims alleged that Arnesen told Putnam that "ERS could ensure that Bullet Trap could get a new roof without paying any money, including its deductible." However, after Arnesen learned the deductible was $25,000, he "refused to cover the deductible and demanded that Bullet Trap split the cost." Bullet Trap alleged ERS breached the contract "when it refused to pay Bullet Trap's deductible and demanded Bullet Trap pay half of the deductible, thereby excusing Bullet Trap's performance." For the fraud cause of action, Bullet Trap alleged "ERS falsely represented to Bullet Trap that it would not have to pay for the deductible before Bullet Trap agreed to the contract, knowing the falsity of the representation or made recklessly as a positive assertion if ERS did not have knowledge of its truth." For the DTPA cause of action,

---

[4] There is one exception: A trial court must award attorney's fees to a defendant in a DTPA case if the court finds the DTPA action "was groundless in fact or law or brought in bad faith, or brought for the purpose of harassment." TEX. BUS. & COM. CODE ANN. § 17.50(c). The trial court in this case made no finding under this provision, so ERS was not entitled to recover attorney's fees under the DTPA..

Bullet Trap alleged ERS's conduct "constitute[d] an unconscionable action or course of action" and "false, misleading, and deceptive acts and practices under 17.46(b) of the DTPA."

For ERS to recover fully on its breach-of-contract claim, it had to overcome Bullet Trap's breach-of-contract allegations that ERS breached the contract first and that its breach excused Bullet Trap's performance. Therefore, ERS is entitled to recover its attorney's fees relating to that counterclaim. Even if ERS is not entitled to recover its attorney's fees for the fraud and DTPA counterclaims, the attorney's fees relating to those counterclaims also applied to the breach-of-contract counterclaim for which ERS is allowed to recover its attorney's fees. *See 7979 Airport Garage*, 245 S.W.3d at 507.

We conclude the trial court did not err by awarding ERS the full amount of its attorney's fees. We overrule Bullet Trap's third issue.

## CONCLUSION

We affirm the trial court's judgment.

/Lana Myers/
LANA MYERS
JUSTICE

180529F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

BULLET TRAP, L.L.C. F/K/A BULLET TRAP, INC., Appellant

No. 05-18-00529-CV      V.

WATERPROOF POSITIVE, LLC D/B/A ENERGY ROOFING SOLUTIONS, Appellee

On Appeal from the 199th Judicial District Court, Collin County, Texas
Trial Court Cause No. 199-04389-2016.
Opinion delivered by Justice Myers.
Justices Molberg and Carlyle participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee WATERPROOF POSITIVE, LLC D/B/A ENERGY ROOFING SOLUTIONS recover its costs of this appeal and the full amount of the trial court's judgment from appellant BULLET TRAP, L.L.C. F/K/A BULLET TRAP, INC. and from the deposit of supersedeas bond. After the judgment and all costs have been paid, we **DIRECT** the clerk of the trial court to release the balance, if any, of the deposit of supersedeas bond to Bullet Trap, Inc.

Judgment entered this 5th day of August, 2019.